ANTHONY CURTIS SLOAN, JR., Plaintiff v. CHENAY SANDERS SLOAN, Defendant
v. ANTHONY C. SLOAN, SR. and KATHY SLOAN, Intervenors

No. COA03-905

(Filed 4 May 2004)

### 1. Child Support, Custody, and Visitation— visitation— grandparents

The trial court did not err by denying defendant mother's motion to dismiss intervenor paternal grandparents' motions regarding visitation with the minor child following the death of plaintiff father and by modifying the previous child custody order to award intervenors additional visitation privileges on the grounds of a substantial change in circumstances, because: (1) although not originally parties to the custody action, as the paternal family and parents of plaintiff, intervenors were initially awarded temporary custody and subsequently awarded permanent visitation rights by those orders which were entered during the underlying custody dispute and before plaintiff's death; (2) the trial court was within its discretion to issue those orders under N.C.G.S. § 50-13.2(b1), and defendant never appealed either order resulting in each becoming a standing order of the court; (3) by filing a motion to intervene in the matter, intervenors were simply requesting to be formally recognized as parties to a child custody action in which they had already been awarded visitation rights; (4) in instances where a custody order has already been entered as to the parties, that order may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party, N.C.G.S. § 50-13.7(a); and (5) despite defendant's assertion to the contrary, the findings show that the trial court's basis for modifying the previous custody order was based on more than just defendant ceasing intervenors' telephone contact with the minor child.

### 2. Contempt— criminal—child custody

The trial court did not err in a child custody case by denying defendant mother's motion to dismiss intervenor paternal grandparents' motion to show cause and by ultimately concluding defendant was guilty of criminal contempt, because: (1) intervenors did not lack standing to move for a show cause hearing as to why defendant should not be held in civil or criminal contempt for violating the order awarding telephonic visitation with the

minor child prior to plaintiff father's death; and (2) the trial court found that defendant willfully, unlawfully, and without legal excuse failed to abide by that order.

Appeal by defendant from orders entered 25 February 2003 by Judge Albert A. Corbett, Jr. in Harnett County District Court. Heard in the Court of Appeals 19 April 2004.

*Jones and Jones, P.L.L.C., by Cecil B. Jones, for defendant-appellant.*

*Hayes, Williams, Turner & Daughtry, P.A., by Parrish Hayes Daughtry, for intervenor-appellees.*

HUNTER, Judge.

Chenay Sanders Sloan ("defendant") appeals separate orders (1) allowing Kathy and Anthony C. Sloan, Sr. ("intervenors") to intervene and be made formal parties to a child custody action, (2) finding defendant in criminal contempt for violating a previously entered permanent child custody order, and (3) modifying that previous custody order to allow intervenors greater visitation with their grandchild on the grounds of a substantial change in circumstances. Defendant also appeals the trial court's order denying her motion to dismiss intervenors' motions pursuant to Rule 12(b)(6) and/or because the trial court lacked subject matter jurisdiction. For the reasons stated herein, we affirm.

On 18 January 2001, Anthony Curtis Sloan, Jr. ("plaintiff") filed a complaint against defendant seeking temporary and permanent custody of their daughter ("C.S.") after defendant abandoned their marriage and moved to the State of Washington with the minor child. After defendant answered plaintiff's complaint and counterclaimed for temporary and permanent custody of C.S, a hearing to determine temporary custody was held on 17 July 2001. By order entered 20 August 2001, the trial court held, *inter alia*:

3. That the Temporary Custody of the minor child is hereby awarded as set forth in the following schedule:

a. The Plaintiff *and the paternal family of the minor child* shall have Temporary Custody of the minor child during the period beginning with the entry of this Order until 6:00 p.m. Pacific Standard Time, September 2, 2001. The Plaintiff shall arrange for the minor child to be transported to the State of

Washington and delivered to the Defendant no later that 6:00 p.m. Pacific Standard Time, September 2, 2001. During this period, the *Plaintiff shall not be left alone with the minor child at any time.*

　　b. The Defendant and the maternal family of the minor child shall have Temporary Custody of the minor child during the period beginning at 6:00 p.m. Pacific Standard Time, September 2, 2001 until 9:00 a.m. Eastern Standard Time, October 9, 2001. . . .

　　. . . .

　　6. That the Plaintiff and the Defendant shall each arrange for a home study to be conducted of their respective homes, *as well as the home of the minor child's paternal grandparents*, no later than October 9, 2001. . . .

(Emphasis added.) Prior to that order, the trial court had found that intervenors lived in close proximity to plaintiff and, having already established a loving relationship with C.S. as her natural paternal grandparents, would be assisting plaintiff in caring for the minor child.

A hearing for permanent custody was held on 25 October 2001. By order entered 10 January 2002, defendant was awarded permanent custody of C.S., but the court concluded, *inter alia*, "[t]hat the Plaintiff *and/or his parents* shall be entitled to contact the minor child [by telephone] two times each week for thirty (30) minutes [sic] intervals . . . ." (Emphasis added.) However, all communication with intervenors ceased when plaintiff was unexpectedly killed on 26 September 2002.

Thereafter, intervenors filed a "Motion to Intervene, Motion to Show Cause, and Motion to Modify Pervious Order" on 15 October 2002. By their motions, intervenors sought to formally be made parties to the child custody action, have defendant show cause as to why she should not be held in contempt for failing to allow them telephonic visitation with C.S. as per the previous custody order, and obtain greater visitation rights. In response, defendant sought dismissal of intervenors' motions (1) pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and/or (2) on the basis that the trial court lacked subject matter jurisdiction pursuant to Sections 50-13.3 and 50-13.5(j) of the North Carolina General Statutes.

The motions were heard on 5 November 2002. As a result, the trial court denied defendant's motions after concluding intervenors had

actually been made *de facto* parties to the child custody action when they were awarded temporary custody and telephonic visitation in the previous orders before plaintiff's death. Intervenors were thus allowed to intervene in the action, and defendant was found in criminal contempt for denying them telephonic visitation with C.S. on six different occasions. The trial court also modified intervenors visitation with C.S. on the grounds of substantial change in circumstances. Defendant appeals.

I.

**[1]** By defendant's first assignment of error she argues the trial court erred in denying her motion to dismiss intervenors' motions regarding visitation with C.S. We disagree.

The word "custody" is generally "deemed to include custody or visitation or both." N.C. Gen. Stat. § 50-13.1(a) (2003). Under limited circumstances, grandparents have standing to sue for visitation of their grandchild. *Montgomery v. Montgomery*, 136 N.C. App. 435, 436, 524 S.E.2d 360, 362 (2000). As articulated by this Court in *Montgomery*, those limited circumstances are as follows:

> First, N.C.G.S. § 50-13.2(b1) states that "an *order for custody of a minor child* may provide visitation rights for any grandparent of the child as the court in its discretion deems appropriate".

> Second, N.C.G.S. § 50-13.2A, entitles a grandparent to seek visitation when the child is "*adopted by a stepparent or a relative of the child* where a substantial relationship exists between the grandparent and the child."

> Third, N.C.G.S. § 50-13.5(j) entitles a grandparent to seek visitation "[i]n any action in which the *custody of a minor child has been determined*, upon a motion in the cause and a showing of changed circumstances pursuant to G.S. 50-13.7".

> Finally, N.C.G.S. § 50-13.1(a) entitles a grandparent to "institute an action or proceeding for custody" of their grandchild. However, . . . grandparents are not entitled to seek visitation under N.C.G.S. § 50-13.1(a) when there is no ongoing custody proceeding and the grandchild's family is intact.

*Id.* at 436-37, 524 S.E.2d at 362 (citations omitted).

In the case *sub judice*, defendant contends the trial court erred in dismissing her motions because (1) intervenors lacked standing to

seek visitation under Section 50-13.1(a) since there was no ongoing custody proceeding and the grandchild's family was intact, and (2) the trial court no longer retained jurisdiction on the issue of custody following the death of plaintiff based on our Supreme Court's interpretation of Section 50-13.5(j). *See McIntyre v. McIntyre*, 341 N.C. 629, 633, 461 S.E.2d 745, 748 (1995) (holding the trial court retains jurisdiction over issues of custody and visitation "until the death of one of the parties"); *Fisher v. Gaydon*, 124 N.C. App. 442, 445, 477 S.E.2d 251, 253 (1996) (holding that a single parent living with his or her child is an " 'intact family' "). However, while it is clear that statutory authority and case law would support defendant's contention if the issue of grandparent visitation and/or custody had been raised for the first time when intervenors filed their motions, such was not the case here because the trial court had already awarded temporary custody and visitation to them in previous orders.

In the temporary custody order, the trial court awarded "Plaintiff and the paternal family of the minor child," temporary custody of C.S., as well as ordered a home study of intervenors' home after finding that plaintiff's parents would be assisting him in the care and maintenance of the child. Thereafter, a permanent custody order was entered awarding defendant permanent custody of C.S., but granting "Plaintiff and/or his parents" telephonic visitation with the child twice a week. Although not originally parties to the custody action, as the *paternal family* and *parents* of plaintiff, intervenors were initially awarded temporary custody and subsequently awarded permanent visitation rights by those orders, which were entered during the underlying custody dispute and before plaintiff's death. The trial court was well within its discretion to issue those orders pursuant to Section 50-13.2(b1) (2003), and defendant never appealed either order resulting in each becoming a standing order of the court.

Moreover, after a trial court has awarded custody to a person who was not a party to the action or proceeding, this Court has held that

> it would be proper and advisable for that person to be made a party to the action or proceeding to the end that such party would be subject to orders of the court. . . . [T]his may be done even after judgment and by the appellate court when the case is appealed.

*In re Branch*, 16 N.C. App. 413, 415, 192 S.E.2d 43, 45 (1972) (holding that a trial court was authorized to award custody to the father on the basis of change of conditions even though the father had not filed a

pleading asking for custody of his children). By filing a motion to intervene in the matter, intervenors were simply requesting to be formally recognized as parties to a child custody action in which they had already been awarded visitation rights. Therefore, the trial court did not err in granting their motion to intervene even after the order determining permanent custody of C.S. was entered.

Nevertheless, defendant contends that even if intervention by intervenors was proper, her motion to dismiss should have been granted because intervenors failed to show that the previous custody order required modification on the basis that she acted in a manner inconsistent with the best interests of the child. Specifically, defendant asserts that the trial court erred in modifying the previous custody order solely on the basis that she ceased intervenors' telephone contact with C.S. Yet, as stated earlier, the previous custody order had already determined that defendant be awarded permanent custody of C.S. and intervenors be awarded telephonic visitation. In instances where a custody order has already been entered as to the parties, that order "may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party . . . ." N.C. Gen. Stat. § 50-13.7(a) (2003).

The trial court made numerous findings of fact justifying substantially modifying C.S.'s visitation with intervenors on the basis of substantial change in circumstances. Those findings were summarized a follows:

a. The Defendant has recklessly disregarded the minor child's best interest by violating the Court's previous Orders by not allowing telephone visitation with the Intervenors as Court ordered.

b. That the Defendant's actions have placed the minor child at a substantial risk of a negative impact both presently and in the future.

c. That the Intervenors were previously granted and assured phone contact/visitation with the minor child; however, since the Plaintiff's untimely death this visitation has been denied and it is most likely that any physical visitation will likewise be denied unless Court ordered.

d. That the Intervenors have had a continuous and extensive loving relationship with the minor child since the entry of the previous custody Order.

e. That the Intervenors have been active in the minor child's life to the extent that they have taken advantage of every available opportunity to visit with and care for the minor child since the entry of the previous custody Order.

Despite defendant's assertion to the contrary, the findings clearly show that the trial court's basis for modifying the previous custody order was based on more than just defendant ceasing intervenors' telephone contact with C.S. Defendant does not take issue with these findings, making them binding on appeal. Thus, the trial court did not err in denying defendant's motion to dismiss and subsequently modifying the previous custody order to award intervenors additional visitation privileges on the grounds of a substantial change in circumstances because "[t]he best interests of the children are and have always been the polar star in determining custody actions as well as visitation rights." *Hedrick v. Hedrick*, 90 N.C. App. 151, 156, 368 S.E.2d 14, 17 (1988).

II.

**[2]** Finally, defendant argues the trial court erred in finding the defendant guilty of criminal contempt. We disagree.

"An order providing for the custody of a minor child is enforceable by proceedings for civil contempt, and its disobedience may be punished by proceedings for criminal contempt . . . ." N.C. Gen. Stat. § 50-13.3(a) (2003). "It is well settled that in contempt proceedings the trial court's findings of fact are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency to warrant the judgment." *Glesner v. Dembrosky*, 73 N.C. App. 594, 597, 327 S.E.2d 60, 62 (1985).

In the instant case, defendant does not argue that there was insufficient competent evidence to warrant her being found guilty of criminal contempt, only that the trial court lacked subject matter jurisdiction to do so because intervenors lacked standing to file motions in an action to which they were not parties and could not be parties due to plaintiff's death. However, once again, intervenors did not lack standing to move for a show cause hearing as to why defendant should not be held in civil or criminal contempt for violating the order awarding telephonic visitation with C.S. prior to plaintiff's death. The trial court found that defendant "willfully, unlawfully and without legal excuse failed to abide" by that order. "The integrity of

the court system and its judgments demands that parties may not cease compliance with judgments at whatever times they may see fit." *Id.* at 598, 327 S.E.2d at 63. Accordingly, the trial court did not err in denying defendant's motion to dismiss intervenors' motion to show cause, and ultimately concluding defendant was guilty of criminal contempt.

Affirmed.

Chief Judge MARTIN and Judge THORNBURG concur.