HAMPSON, Judge.
 

 *252
 

 Factual and Procedural Background
 

 Cheri Malone (Intervenor) appeals from an Order to Dismiss filed on 9 October 2017 and a Custody/Visitation Order entered on 26 April 2018 concluding her grandparental visitation rights established in this child custody matter were terminated as a result of the termination of her daughter's parental rights in a separate action.
 

 Christopher Adams (Plaintiff) and Brittany Langdon (Defendant) are the biological parents of a child born in 2007. When the child was approximately seven months old, Plaintiff filed a complaint seeking joint custody of the child. Defendant timely answered the complaint; however, neither party pursued a custody order until Plaintiff obtained an Ex Parte Temporary Custody Order on 13 October 2011, based on Defendant's alleged mental illness and substance abuse.
 

 On 24 October 2011, Plaintiff and Defendant entered into a Memorandum of Judgment/Order establishing temporary custody pending a later permanent custody hearing. This Memorandum of Judgment/Order granted Plaintiff primary custody of the child and provided Defendant with supervised visitation. Defendant's visitation was to be supervised by Intervenor, who is Defendant's mother and thus the child's maternal grandmother.
 

 Subsequently, on 11 January 2012, the trial court entered a Temporary Custody Order modifying the 24 October 2011 Memorandum of Judgment/Order. This Temporary Custody Order ceased Defendant's supervised visitation until completion of substance abuse testing and assessments.
 

 On 10 February 2012, Intervenor filed a Motion to Intervene alleging she was the maternal grandmother of the child; she had a "close parental type relationship" with the child, given that the child had lived with her for several years; there was an ongoing custody dispute between the child's parents; and it was in the best interest of the child to allow her visitation rights. Plaintiff and Defendant consented to the intervention in a Memorandum of Judgment/Order on 1 March 2012, in which the parties also consented to allow Intervenor visitation with the child. Several weeks later, on 28 March 2012, the trial court entered a separate
 
 *253
 
 order allowing the intervention. This 28 March 2012 Order concluded that Intervenor had standing to intervene as an interested party pursuant to Rule 24 of the North Carolina Rules of Civil Procedure and sections 50-13.2(b1) and 50-13.5(j) of our General Statutes.
 

 By consent of the parties, the trial court entered a Permanent Custody Order on 26 April 2012. This Order provided Plaintiff sole custody of the child and Intervenor with visitation one weekend per month and one additional Saturday per month. Defendant
 
 *238
 
 was prohibited from any visitation with the child.
 

 On 12 September 2012, Defendant filed a motion alleging she had completed a six-week drug program and seeking to modify the Permanent Custody Order to permit her to have supervised visitation. By consent of the parties, the trial court entered a Temporary Memorandum of Judgment/Order on 5 November 2012 giving Defendant visitation only under the supervision of Intervenor and leaving all other provisions of the 26 April 2012 Permanent Custody Order in full force.
 

 The Record reflects the case was dormant for approximately five years when in a separate action, Plaintiff petitioned to have Defendant's parental rights terminated (TPR proceeding). While Intervenor was apparently present for the termination of parental rights hearing, she was not a party to the TPR proceeding. On 27 September 2017, the trial court in the TPR proceeding entered an order terminating Defendant's parental rights to the child.
 

 With this backdrop, in the custody case before us, on 30 August 2017, Defendant filed a Motion and Notice of Hearing for Contempt alleging Plaintiff was in violation of the 5 November 2012 custody order by refusing to allow Defendant's supervised visitation and phone calls. The contempt hearing was set for 9 October 2017. On the day of the hearing, District Court Judge Jim Love, Jr. entered an Order to Dismiss (9 October 2017 Order to Dismiss). The 9 October 2017 Order to Dismiss was entered on an administrative form and makes no findings of fact nor conclusions of law. The 9 October 2017 Order to Dismiss appears to contain the following relevant provisions with marked boxes:
 

 8. Pursuant to Rule 41(a)
 
 [x]
 
 this action
 
 [x]
 
 all outstanding motions is/are
 

 VOLUNTARILY DISMISSED
 
 [x]
 
 with prejudice
 

 ....
 

 *254
 
 10. Show Cause is made permanent.
 

 ALL OPEN ISSUES ARE INVOLUNTARILY DISMISSED
 
 [x] WITH PREJUDICE
 
 ... pursuant to Rule 41(b) for failure to appear and prosecute this action.
 

 ....
 

 15.
 
 Other
 
 TPR granted against [Defendant].
 

 The Record indicates Intervenor received no notice of these contempt proceedings and was not served with the 9 October 2017 Order to Dismiss.
 

 On 1 November 2017, Intervenor filed a show cause motion for visitation. An Order to Show Cause for why Plaintiff should not be held in contempt for violating the 26 April 2012 Order issued the same day. At the 20 November 2017 hearing, Plaintiff and Intervenor indicated there was a disagreement on a preliminary legal issue: whether the termination of Defendant's parental rights also terminated Intervenor's visitation rights.
 

 On 26 April 2018, District Court Judge Mary H. Wells entered a Custody/Visitation Order (26 April 2018 Custody/Visitation Order). The trial court ruled "grandparent visitation arises from the litigated custody action of the parent, and accordingly, a grandparent's rights to the care, custody and control of the child are not constitutionally protected except through the parent's constitutional protection." The trial court further concluded "the custody action does not survive the termination of [Defendant's] parental rights, therefore, the grandparent rights of [Intervenor] do not survive [Defendant's] parental rights being [terminated and] that [Intervenor's] grandparent visitation rights are terminated along with the custodial and parental rights of her daughter [Defendant]." The trial court thus concluded Plaintiff was not in violation of the prior custody order since this custody action did not survive the termination of Defendant's parental rights.
 

 On 3 May 2018, Intervenor timely filed Notice of Appeal from the 26 April 2018 Custody/Visitation Order. On 18 May 2018, Intervenor filed a Notice of Appeal from the 9 October 2017 Order to Dismiss. In her 18 May 2018 Notice of Appeal, Intervenor alleged she had no notice of the 9 October 2017 Order to Dismiss until Intervenor's counsel located it in the file in the clerk's office on 3 May 2018. Intervenor further noted to the extent the 9 October 2017 Order to Dismiss purported to dismiss the entire custody action with prejudice, it served as an adverse ruling against her.
 

 *239
 

 *255
 

 Appellate Jurisdiction
 

 The trial court's 9 October 2017 Order to Dismiss and 26 April 2018 Custody/Visitation Order are each final orders resolving the then-pending issues before the trial court. Thus, this Court has appellate jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2017).
 

 Intervenor's Notice of Appeal from the 26 April 2018 Custody/Visitation Order was timely filed within 30 days of entry of that Order. The timeliness of Intervenor's 18 May 2018 Notice of Appeal from the 9 October 2017 Order to Dismiss, however, requires further analysis.
 

 According to Intervenor's Notice of Appeal from the 9 October 2017 Order to Dismiss, this Order was never served on Intervenor, and Intervenor first learned of the Order on 3 May 2018 when counsel for Intervenor found the Order in the court file. Upon learning of this Order, Intervenor promptly filed Notice of Appeal.
 

 Our Court has recently stated: "[W]here ... there is no certificate of service in the record showing
 
 when
 
 appellant was served with the trial court judgment,
 
 appellee
 
 must show that appellant received actual notice of the judgment more than thirty days before filing notice of appeal in order to warrant dismissal of the appeal."
 
 Brown v. Swarn
 
 , --- N.C. App. ----, ----,
 
 810 S.E.2d 237
 
 , 240 (2018) (emphasis added). Under
 
 Brown
 
 , unless the appellee argues that the appeal is untimely, and offers proof of actual notice, we may not dismiss. Appellee-Plaintiff has not argued Intervenor's appeal is untimely or offered proof of Intervenor's actual notice of the 9 October 2017 Order to Dismiss; therefore, Intervenor's Notice of Appeal from that Order is deemed timely filed.
 
 See
 
 id.
 

 Issue
 

 The dispositive issue on appeal is whether the visitation rights of Intervenor, as established in the 26 April 2012 Custody Order, were terminated when the parental rights of her daughter, Defendant, were terminated in a separate termination of parental rights action brought by the child's father to which Intervenor was not a party.
 

 Analysis
 

 I. Standard of Review
 

 Both the 9 October 2017 Order to Dismiss and the 26 April 2018 Custody/Visitation Order were entered in the context of civil contempt proceedings. "When reviewing a trial court's contempt order, the appellate court is limited to determining whether there is competent evidence
 
 *256
 
 to support the trial court's findings and whether the findings support the conclusions [of law]."
 
 Shumaker v. Shumaker
 
 ,
 
 137 N.C. App. 72
 
 , 77,
 
 527 S.E.2d 55
 
 , 58 (2000) (citation omitted). "The trial court's conclusions of law drawn from the findings of fact [in civil contempt proceedings] are reviewable
 
 de novo
 
 ."
 
 Tucker v. Tucker
 
 ,
 
 197 N.C. App. 592
 
 , 594,
 
 679 S.E.2d 141
 
 , 143 (2009) (citation and quotation marks omitted). " 'Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal."
 
 State v. Williams
 
 ,
 
 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (quoting
 
 In re Appeal of the Greens of Pine Glen Ltd. P'ship
 
 ,
 
 356 N.C. 642
 
 , 647,
 
 576 S.E.2d 316
 
 , 319 (2003) ).
 

 II. Grandparent Visitation
 

 A. The 26 April 2018 Custody/Visitation Order
 

 In the 26 April 2018 Custody/Visitation Order, the trial court concluded as a matter of law that Intervenor's grandparental visitation rights, established in the prior custody order, did not survive the termination of Defendant's parental rights, reasoning the custody action did not survive the termination of Defendant's parental rights.
 

 At common law, grandparents had no independent right to seek visitation with their own grandchildren.
 
 Montgomery v. Montgomery
 
 ,
 
 136 N.C. App. 435
 
 , 436,
 
 524 S.E.2d 360
 
 , 361 (2000) (citations omitted). North Carolina, however, by statute, grants grandparents the ability to seek court-ordered visitation with their grandchildren in several defined circumstances:
 

 First, N.C.G.S. § 50-13.2(b1) states that "[a]n
 
 order for custody of a minor child
 
 may provide visitation rights for any
 
 *240
 
 grandparent of the child as the court in its discretion deems appropriate".
 

 Second, N.C.G.S. § 50-13.2A, entitles a grandparent to seek visitation when the child is "
 
 adopted by a stepparent or a relative of the child
 
 where a substantial relationship exists between the grandparent and the child."
 

 Third, N.C.G.S. § 50-13.5(j) entitles a grandparent to seek visitation "[i]n any action in which the
 
 custody of a minor child has been determined
 
 , upon a motion in the cause and a showing of changed circumstances pursuant to G.S. 50-13.7".
 

 Finally, N.C.G.S. § 50-13.1(a) entitles a grandparent to "institute an action or proceeding for custody" of their
 
 *257
 
 grandchild. However, ... grandparents are not entitled to seek visitation under N.C.G.S. § 50-13.1(a) when there is no ongoing custody proceeding and the grandchild's family is intact.
 

 Id.
 

 at 436-37
 
 ,
 
 524 S.E.2d at 362
 
 (alteration in original) (citations omitted).
 

 In this case, prior to the termination of Defendant's parental rights, Intervenor sought to intervene in the custody dispute under
 
 N.C. Gen. Stat. § 50-13.2
 
 (b1) and
 
 N.C. Gen. Stat. § 50-13.5
 
 (j), alleging an ongoing custody dispute between Plaintiff and Defendant. The trial court granted the Motion to Intervene on 28 March 2012. The Permanent Custody Order establishing Intervenor's grandparental visitation rights was entered on 26 April 2012. Defendant's parental rights were terminated on 27 September 2017. On appeal, Plaintiff contends the termination of Defendant's parental rights necessarily abrogated Intervenor's court-ordered visitation rights. We disagree.
 

 As a general rule, grandparents are only granted standing to intervene in a case seeking visitation under
 
 N.C. Gen. Stat. § 50-13.2
 
 (b1) "when custody of the minor children is an ongoing issue."
 
 Smith v. Barbour
 
 ,
 
 195 N.C. App. 244
 
 , 251,
 
 671 S.E.2d 578
 
 , 584 (2009). This requires the custody of a child being "in issue" or "being litigated."
 
 Id
 
 . (citation and quotation marks omitted). Thus, for example, this Court has recognized where one parent dies in the midst of a custody action, but before the grandparent seeks to intervene, there was no ongoing custody action in which the grandparent could intervene, nor could the grandparent initiate a separate action.
 
 McDuffie v. Mitchell
 
 ,
 
 155 N.C. App. 587
 
 , 590,
 
 573 S.E.2d 606
 
 , 608 (2002). Likewise, this Court has held grandparents could not
 
 initiate
 
 an action for visitation where the child was living with one parent after the other parent's parental rights had been terminated because there was no ongoing custody dispute.
 
 Fisher v. Gaydon
 
 ,
 
 124 N.C. App. 442
 
 , 445,
 
 477 S.E.2d 251
 
 , 253 (1996).
 

 However, "once grandparents have become parties to a custody proceeding-whether as formal parties or as
 
 de facto
 
 parties-then the court has the ability to award or modify visitation even if no ongoing custody dispute exists between the parents at the time."
 
 Quesinberry v. Quesinberry
 
 ,
 
 196 N.C. App. 118
 
 , 122,
 
 674 S.E.2d 775
 
 , 778 (2009) (citation omitted).
 
 [1]
 
 This is because once a grandparent intervenes in a case,
 
 *258
 
 they are "as much a party to the action as the original parties are and [have] rights equally as broad. ... Once an intervenor becomes a party, he should be
 
 a party for all purposes
 
 ."
 
 Id.
 
 at 124,
 
 674 S.E.2d at 779
 
 (citations and quotation marks omitted). Thus, there, the trial court retained jurisdiction over a pending grandparental visitation claim even where the parents resolved their own custody claims via consent order.
 
 Id
 
 .
 

 Consequently, we conclude, here, where Intervenor had not only intervened in the case but also obtained visitation rights via a permanent custody order, the termination of Defendant's parental rights did not extinguish Intervenor's court-ordered visitation rights.
 

 We find support for our conclusion in this Court's analogous decision in
 
 Sloan v. Sloan,
 

 164 N.C. App. 190
 
 ,
 
 595 S.E.2d 228
 
 (2004). In
 
 Sloan
 
 , the original custody order granted the paternal grandparents telephonic visitation
 
 *241
 
 rights with the minor child.
 
 Id.
 
 at 192,
 
 595 S.E.2d at 230
 
 . The paternal grandparents had not been made parties to the action.
 

 Id.
 

 After the unexpected death of the father, the paternal grandparents filed a motion to intervene, along with motions to modify the original custody order and to hold the mother in contempt for failing to allow their telephonic visitation.
 

 Id.
 

 The mother argued that because of the father's death, there was no ongoing custody dispute, the child was living in an intact family, and the trial court lost jurisdiction over child custody upon the father's death.
 
 Id.
 
 at 193-94,
 
 595 S.E.2d at 231
 
 . This Court held because the original custody order between the parties already granted the paternal grandparents visitation rights, the trial court did not err in retaining jurisdiction over child custody and allowing the paternal grandparents to formally intervene in the case for purposes of enforcement and modification of the visitation provisions of the original custody order.
 
 [2]
 

 Id.
 
 at 194-97,
 
 595 S.E.2d at 231-32
 
 .
 

 We see no distinction between the death of one parent, as in
 
 Sloan
 
 , and the termination of one parent's parental rights, as in the case
 
 sub judice
 
 .
 
 Cf
 
 .
 
 Stann v. Levine
 
 ,
 
 180 N.C. App. 1
 
 , 11 n.9,
 
 636 S.E.2d 214
 
 , 220 n.9 (2006) (describing termination of parental rights as "tantamount to a civil death penalty" (citation and quotation marks omitted) ). Thus, where Intervenor was a party to this child custody action and was awarded visitation with her grandchild by a court order, those visitation rights existed independently of Defendant's parental and custodial
 
 *259
 
 rights. Therefore, with respect to Intervenor's visitation rights, the custody action survived, and those court-ordered visitation rights survived the termination of Defendant's parental rights.
 

 Consequently, the trial court erred in concluding Intervenor's visitation rights under the prior custody order did not survive termination of Defendant's parental rights. Therefore, Intervenor could seek to enforce the prior custody order through contempt proceedings. Accordingly, we reverse the trial court's 26 April 2018 Custody/Visitation Order and remand this matter for further proceedings on the Order to Show Cause issued upon Intervenor's Motion to Show Cause.
 

 B. The 9 October 2017 Order to Dismiss
 

 Intervenor also appeals from the 9 October 2017 Order to Dismiss to the extent it purported to dismiss the entire custody action with prejudice, including as to Intervenor and her grandparental visitation rights. To the extent this was the trial court's intent, for the reasons stated above, we agree this was error.
 

 Plaintiff, however, contends the 9 October 2017 Order to Dismiss was merely intended to dispose of Defendant's own contempt motion following the termination of Defendant's parental rights and was not intended as a dismissal of the entire action. While we agree Plaintiff's interpretation of the 9 October 2017 Order to Dismiss is most likely the correct reading of the trial court's intent, it is not clearly apparent from the trial court's Order.
 

 The trial court's form order reflects both "this action" and "all outstanding motions" are voluntarily dismissed with prejudice. It also reflects that "all open issues" are involuntarily dismissed with prejudice. The form further indicates the trial court considered the termination of Defendant's parental rights as a basis for its order. In short, we are unable to undertake effective appellate review of this order.
 
 See
 

 Coble v. Coble
 
 ,
 
 300 N.C. 708
 
 , 714,
 
 268 S.E.2d 185
 
 , 190 (1980) ("Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated."). Therefore, we remand the 9 October 2017 Order to Dismiss to the trial court for clarification of its Order.
 

 Conclusion
 

 Accordingly, we reverse the 26 April 2018 Custody/Visitation Order and remand for further proceedings on the Order to Show Cause issued upon Intervenor's Motion to Show Cause. We reverse the 9 October 2017
 
 *242
 

 *260
 
 Order to Dismiss and remand the matter to the trial court for clarification of its rationale.
 

 REVERSED AND REMANDED.
 

 Chief Judge McGEE and Judge HUNTER concur.
 

 [1]
 

 In this context, "
 
 de facto
 
 parties" refers to grandparents who had not formally intervened as parties at the time the custody order was entered, but who were granted visitation rights by the trial court and were thus functionally made parties to the custody order.
 

 [2]
 

 The
 
 Sloan
 
 Court acknowledged the result would have been different had this been the first time grandparent visitation had been raised as an issue.
 

 Id.
 

 at 194
 
 ,
 
 595 S.E.2d at 231
 
 .