IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-61

No. COA19-391

Filed 16 March 2021

Wake County, No. 10 CVD 16104

AMY H. ALEXANDER, Plaintiff,

v.

EDWARD D. ALEXANDER, Defendant.

v.

CHARLES ALEXANDER and CLARIA ALEXANDER, Intervenor-Defendants.

Appeal by Plaintiff from orders entered 17 February 2017, 8 May 2017, 6 July 2017, 29 November 2017, and 30 April 2018 by Judge Anna E. Worley in Wake County District Court. Heard in the Court of Appeals 18 March 2020.

*Jonathan McGirt for Plaintiff-Appellant.*

*Smith Debnam Narron Drake Saintsing & Myers, L.L.P., by Alicia Jurney, and Parker Bryan Family Law, by Amy L. Britt, for Intervenor-Defendant-Appellees.*

DILLON, Judge.

¶ 1        Plaintiff appeals from various orders culminating in a Permanent Order Granting Grandparent Visitation to Intervenor-Defendants and Awarding Attorney's Fees to Plaintiff.

I. Background

¶ 2        This matter concerns the custody of the child (the "Child") who was born to Plaintiff Amy H. Alexander ("Mother") and Defendant Edward D. Alexander ("Father"). Father is now deceased; therefore, his custody claim has abated. The remaining dispute is between Mother and Father's parents, Intervenor-Defendants Charles and Claria Alexander ("Grandparents"), and concerns whether Grandparents should enjoy visitation rights with the Child of their deceased son.

¶ 3        Mother and Father were married in 2006. Their Child was born in 2009. In 2014, when the Child was five years of age, Mother and Father divorced. They entered a consent order (the "2014 Consent Order") agreeing to joint custody.

¶ 4        Two years later, in 2016, Father developed cancer. As Father's condition worsened, he moved in with Grandparents. The Child lived with Grandparents (and Father) during Father's custody periods.

¶ 5        In 2017, Father moved to modify his 2014 Consent Order with Mother. Grandparents then moved to intervene and for permanent visitation rights. In February 2017, the trial court allowed Grandparents to intervene but put off consideration of their motion for visitation rights.

¶ 6        Three months later, in May 2017, as Father's condition grew more dire, the trial court entered an order which essentially granted Grandparents some temporary rights regarding the care of the Child. Specifically, the trial court ordered that the

status quo be maintained until such time that it ruled on Father's motion to modify the 2014 Consent Order and Grandparents' motion for visitation rights.

¶ 7    On 8 June 2017, Father died. The trial court dismissed Father's motion to modify the 2014 Consent Order due to mootness. By its terms, the "status quo" order remained in effect. Mother, though, sought an order to have Grandparents' temporary rights terminated as she was now the Child's sole parent.

¶ 8    In 2018, after a hearing on the matter, the trial court entered its permanent order (the "2018 Permanent Order"). In the 2018 Permanent Order, the trial court awarded Mother primary physical and sole legal custody of the Child but granted Grandparents permanent, extensive visitation rights. The trial court also awarded Mother *some* of the attorney's fees that she had incurred. Mother appealed.

## II. Analysis

¶ 9    Mother makes two arguments on appeal, which we address in turn.

## A. Grandparent Visitation

¶ 10    Mother argues that the trial court had no statutory authority to award Grandparents visitation rights once Father had died and she became the Child's sole parent. Alternatively, Mother argues that any statute which authorizes a court to grant grandparents visitation rights is unconstitutional as applied to her in this case because the granting of visitation rights to Grandparents violates her constitutional rights to raise her Child as she sees fit.

¶ 11    Indeed, grandparents do not have a *constitutional* right nor rights under our common law to seek visitation as against the rights of a custodial parent(s). *See, e.g., Montgomery v. Montgomery*, 136 N.C. App. 435, 436, 524 S.E.2d 360, 361 (2000). Our General Assembly, though, has *by statute* authorized the granting of visitation rights for grandparents in certain instances.

¶ 12    Before considering Mother's constitutional arguments, we first address whether the trial court exceeded its *statutory* authority to award Grandparents visitation rights in this case.

### B. Grandparent Visitation - Statutory Authority

¶ 13    The trial court granted Grandparents visitation rights based on Section 50-13.2(b1) and Section 50-13.5(j) of our General Statutes. N.C. Gen. Stat. §§ 50-13.2(b1), 13.5(j) (2017).

¶ 14    Section 50-13.2(b1) provides that a trial court may include in a custody order terms "provid[ing] visitation rights for any grandparent of the child as the court, in its discretion, deems appropriate." Section 50-13.5(j) provides that after a custody determination has been made, grandparents may seek visitation rights where there has been a showing of changed circumstances.

¶ 15    The seminal case from our Supreme Court on grandparent visitation rights is *McIntyre v. McIntyre*, 341 N.C. 629, 461 S.E.2d 745 (1995). In that case, the Court held that the rights granted to grandparents in Sections 50-13.2(b1) and 50-13.5(j)

"do not include that of *initiating suit* against parents whose family is intact and where no custody proceeding is ongoing." *Id.* at 635, 461 S.E.2d at 750 (emphasis added).

¶ 16        Following *McIntyre*, our Court has repeatedly held that grandparents only have statutory standing to sue for visitation (where custodial parents are involved) when "the custody of a child [is] 'in issue' or 'being litigated'" by the parents. *Adams v. Langdon*, 264 N.C. App. 251, 257, 826 S.E.2d 236, 240 (2019) (quoting *Smith v. Barbour*, 195 N.C. App. 244, 251, 671 S.E.2d 578, 584 (2009)).

¶ 17        Here, Grandparents did seek to intervene and be granted visitation rights while custody between Father and Mother was being litigated: they filed their motion just after Father filed his motion to modify the original 2014 Consent Order. And it was while Father's motion was still pending that the trial court allowed Grandparents' motion to intervene. Accordingly, based on our jurisprudence, since the custody of the Child was "in issue" and "being litigated" by the parents, the trial court had the statutory authority to allow Grandparents to intervene.

¶ 18        Mother contends, though, that the trial court lost any authority it otherwise might have had to grant the intervening Grandparents visitation rights once Father died, since *at that point* there was no longer a custody dispute between her and Father. Indeed, an underlying custody dispute between parents abates upon the death of one of them. *See, e.g., McDuffie v. Mitchell*, 155 N.C. App. 587, 590, 573

S.E.2d 606, 608 (2002) ("Upon the death of the mother in the instant case, the ongoing case between the mother and father ended.").

¶ 19     We note that our Supreme Court's decision in *McIntyre* does not definitively resolve this issue, as the grandparents in that case initially filed their claim at a time when there was "no [ongoing] custody proceeding" between the children's parents and the "family was intact." *McIntyre*, 341 N.C. at 629, 461 S.E.2d at 746. And to reiterate, the Court merely held that our statutes do not allow grandparents the right of "*initiating suit* against parents whose family is intact and where no custody proceeding is ongoing." *Id.* at 635, 461 S.E.2d at 750 (emphasis added).

¶ 20     Our Court, though, has addressed the issue on a number of occasions since *McIntyre*. For instance, two years ago, our Court summarized many of our other cases to explain that where grandparents have intervened or at least have been made *de facto* parties while the parents are disputing custody of a child, a resolution or abatement of the parents' custody dispute does not cut off the grandparents' statutory right to have their claim for visitation rights heard:

> [T]his Court has recognized where one parent dies in the midst of a custody action, but before the grandparent seeks to intervene, there was no ongoing custody action in which the grandparent could intervene, nor could the grandparent initiate a separate action. . . .
>
> However, once grandparents have become parties to a custody proceeding—whether as formal parties or as *de facto* parties—then the court has the ability to award or

> modify visitation even if no ongoing custody dispute exists between the parents at the time. This is because once a grandparent intervenes in a case, they are as much a party to the action as the original parties are and have rights equally as broad. Once an intervenor becomes a party, he should be *a party for all purposes*. Thus, there, the trial court retained jurisdiction over a pending grandparental visitation claim even where the parents resolved their own custody claims via consent order.

*Adams*, 264 N.C. App. at 257-58, 826 S.E.2d at 240 (emphasis in original) (internal quotation marks and citations omitted).

In 2004, nine years after *McIntyre*, our Court considered another case involving the rights of grandparents to seek expanded visitation rights against a mother of their grandchild after their son (the child's father) had died. *Sloan v. Sloan*, 164 N.C. App. 190, 595 S.E.2d 228 (2004). In *Sloan*, the paternal grandparents were granted certain temporary visitation rights while the parents were engaged in a custody dispute, even though the grandparents had never formally intervened. *Id.* at 191, 595 S.E.2d at 229. After the father of the child unexpectedly died, the grandparents sought to intervene formally and to protect their visitation rights. *Id.* at 192, 595 S.E.2d at 230. Our Court held that since the grandparents had already been awarded visitation rights while there was an active custody dispute between the parents, the trial court retained jurisdiction after the father died to allow the grandparents to formally intervene and to grant the grandparents even greater visitation rights. *Id.* at 196-97, 595 S.E.2d at 232.

¶ 22    Therefore, we conclude that, based on our jurisprudence, Grandparents had statutory standing to seek permanent visitation rights, notwithstanding that Father had died, as they had been allowed to intervene during a time when custody between Father and Mother was in dispute.[1]

### C. Grandparent Visitation - Constitutional Authority

¶ 23    Having determined that the trial court had *statutory* authority to award visitation rights to Grandparents, we must consider Mother's challenge that the 2018 Permanent Order violates her *constitutional* right to raise her Child as she sees fit.

¶ 24    We first consider Grandparents' contention that Mother has failed to preserve her constitutional argument. We hold that Mother has preserved this argument: Mother made constitutional arguments when the trial court considered Grandparents' Motion to Intervene, at a hearing which culminated in the entry of the 2018 Permanent Order, and in her appellate brief. We note that Mother primarily makes a "facial" attack on the grandparent visitation statutes, an argument we find

---

[1] We note Mother's argument that the trial court lacked authority to enter its "status quo" order shortly before Father's death which granted Grandparents temporary visitation rights. However, whether Grandparents were properly granted temporary rights prior to Father's death has no bearing on our analysis regarding whether the trial court had authority to enter its subsequent 2018 Permanent Order after Father's death: Grandparents were made parties and had asserted claims for visitation rights prior to Father's death. Under our case law, it was not necessary for the trial court to have granted Grandparents rights before Father's death in order to have authority to grant Grandparents rights after his death. All that was necessary was that Grandparents had initiated their claim for visitation prior to Father's death at a time when Father and Mother were litigating custody.

unconvincing. For instance, clearly Grandparents may be awarded visitation against the will of the parents without violating the parents' constitutional rights where the parents have been deemed unfit or otherwise have acted inconsistently with their constitutional rights as a parent. *See, e.g., Owenby v. Young*, 357 N.C. 142, 145, 579 S.E.2d 264, 266 (2003). Notwithstanding, we turn to address whether these statutes are unconstitutional "as-applied" to Mother.[2]

¶ 25 The United States Supreme Court has long recognized the constitutional right of parents to "make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (citing several prior decisions). Likewise, our Supreme Court has recognized that "parents have a paramount right to custody, care and nurture of their children" and that this paramount right "includes the right to determine with whom their children shall associate[.]" *McIntyre*, 341 N.C. at 631, 461 S.E.2d at 748 (internal quotation marks omitted). *See also Petersen v. Rogers*, 337 N.C. 397, 402, 445 S.E.2d 901, 904 (1994) (recognizing "the paramount right of parents to custody, care, and nurture of their children").

---

[2] *See Yee v. Escondido*, 503 U.S. 519, 534-35 (1992) (internal citations omitted) ("[P]arties are not limited to the precise arguments they made below. Petitioners' arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate *claims*. They are, rather, separate *arguments* in support of a single claim -- that the ordinance effects an unconstitutional taking. Having raised a taking claim in the state courts, therefore, petitioners could have formulated any argument they liked in support of that claim here.").

¶ 26    However, the paramount right of parents is "not absolute." *Price v. Howard*, 346 N.C. 68, 76, 484 S.E.2d 528, 533 (1997). For instance, the United States Supreme Court has recognized that the State "[a]cting to guard the general interest in [a child's] well being[,] may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor and in many other ways." *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). Our Supreme Court has recognized that the State may strip parents of their constitutional rights to raise their children in certain situations;[3] the State can "establish minimum educational requirements and standards for this education[;]"[4] and the State may require children to undergo certain medical treatments, as the constitutionally-protected paramount right of parents to custody, care, and control of their children does not extend to neglecting the welfare of their children.[5]

¶ 27    While our Supreme Court has stated that custodial parents have a paramount right to determine with whom their children associate, that Court has also determined that the State may grant visitation rights to third parties, such as

---

[3] *In re Clark*, 303 N.C. 592, 607, 281 S.E.2d 47, 57 (1981) (holding that our statutes providing for the termination of parental rights in certain situations do not "contravene[] the Constitutions of the United States [or] the State of North Carolina").

[4] *Delconte v. State*, 313 N.C. 384, 402, 329 S.E.2d 636, 647 (1985).

[5] *Petersen*, 337 N.C. at 403-04, 445 S.E.2d at 905 (internal quotation marks omitted).

grandparents, against the wishes of custodial parents in some situations. *McIntyre*,

341 N.C. at 631, 461 S.E.2d at 748.

¶ 28        And in the *Troxel* case, the seminal case from the United States Supreme Court

on grandparent visitation statutes, the majority[6] of justices on that high Court (in

separate opinions) refused to hold that such statutes are *facially* unconstitutional:

> We do not, and need not, define today the precise scope of
> the parental due process right in the visitation context. In
> this respect, we agree with JUSTICE KENNEDY that the
> constitutionality of any standard for awarding visitation
> turns on the specific manner in which that standard is
> applied and that the constitutional protections in this area
> are best elaborated with care.

*Troxel*, 530 U.S. at 73 (plurality opinion) (internal quotation marks omitted) (refusing

to hold that the Washington State grandparent visitation statute was *facially*

unconstitutional). The Court recognized that all 50 states have provided grandparent

visitation rights by statute. *Id*. at 73 n.1.

¶ 29        In *Troxel*, the Court held that a grandparent visitation statute was

unconstitutional as applied where the trial court granted grandparents visitation

---

[6] The plurality opinion was signed onto by four justices. Justice Stevens wrote a dissenting opinion recognizing the right to provide for grandparent visitation, writing that "it would be constitutionally permissible for a court to award some visitation of a child to a [] previous caregiver [in some circumstances]." *Troxel*, 530 U.S. at 85 (Stevens, J., dissenting). Justice Kennedy wrote a dissenting opinion recognizing this power as well, writing that there does not need to be any finding that the child has been harmed by her decision to justify granting visitation rights. *Id*. at 94 (Kennedy, J., dissenting).

rights based on the court's own determination that said visitation was in the best interest of the child, without giving "any material weight" to the wishes of "a fit custodial parent[.]" *Id.* at 72.

While the Court in *Troxel* did not set forth definitive rules regarding when the grant of visitation for grandparents against the wishes of the custodial parent would be constitutionally permissible, the Justices did give some hints. For instance, the plurality opinion suggests that a trial court may consider granting grandparents visitation rights only after giving special weight to the parent's determination whether such visitation would be in the child's best interest:

> In an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren.
>
> [However,] the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance.
>
> And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, *the court must accord at least some special weight to the parent's own determination*.

*Id.* at 70 (emphasis added) (paragraph breaks supplied). The plurality recognizes a presumption that the fit parent makes decisions that are in the best interests of her child and cannot be overturned merely because a judge believes that a different decision would have been better. *Id.* at 68. Further, the plurality suggests that any

visitation order should not adversely "interfere with the parent-child relationship." *Id.* at 70.

¶ 31 Applying the principles set forth in *Troxel*, we conclude that the 2018 Permanent Order is unconstitutional in two main ways.

¶ 32 First, the trial court failed to give deference to Mother's determination regarding with whom her Child may associate. It is not clear from the record whether Mother wishes that her Child have *no* relationship with Grandparents or to what extent of a relationship she has deemed appropriate. The trial court needs to make findings in this regard. And the court must *presume* that the Mother's determination is correct. This is not to say that the presumption cannot be constitutionally overcome. For instance, there is evidence that the Child has formed a significant bond with Grandparents.

¶ 33 Second, even assuming Grandparents are entitled to an order providing visitation rights, the extent of visitation granted in the 2018 Permanent Order is unconstitutionally generous, as it impermissibly interferes with the parent-child relationship between Mother and her Child.[7] For instance, the trial court's grant of

---

[7] While "in certain contexts 'custody' and 'visitation' are synonymous[,] . . . it is clear that in the context of grandparents' rights to visitation, the two words do not mean the same thing." *McIntyre*, 341 N.C. at 634, 461 S.E.2d at 749. The trial court erred by awarding Mother primary physical custody instead of sole physical custody, and erred by essentially awarding Grandparents secondary custody instead of visitation.

visitation every other Christmas and Thanksgiving is unconstitutional. Mother, as the Child's sole custodial parent, has the right to determine with whom her Child spends these major holidays and should not be deprived of any right to spend these holidays with her Child. Also, the grant of visitation every other weekend is too extensive. Mother, as the Child's sole custodial parent, has the right to direct how her Child spends a large majority of the weekends.

¶ 34 We, therefore, vacate the visitation provisions in the 2018 Permanent Order. On remand, the trial court shall apply the appropriate legal standard as set forth in *Troxel* and other binding authority, recognizing the paramount right of Mother to decide with whom her Child may associate. We make no determination as to whether there is evidence from which findings could be made to overcome Mother's paramount right to justify granting Grandparents visitation rights.

### D. Attorney's Fees

¶ 35 Mother also argues that the trial court abused its discretion in awarding her only part of the attorney's fees she has expended.

¶ 36 Our Supreme Court directs that "the *amount* of attorney's fees to be awarded rests within the sound discretion of the trial judge and is reviewable on appeal only for abuse of discretion." *Hudson v. Hudson*, 299 N.C. 465, 472, 263 S.E.2d 719, 724 (1980) (emphasis in original).

¶ 37 "If the court elects to award attorney's fees, it must also enter findings to support the amount awarded." *Porterfield v. Goldkuhle*, 137 N.C. App. 376, 378, 528 S.E.2d 71, 73 (2000). These findings of fact must include "the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney[] based on competent evidence." *Id*. at 378, 528 S.E.2d at 73.

¶ 38 Here, although the trial court concluded that Mother's $45,753.00 in attorney's fees was reasonable, it ultimately awarded $14,548.50. The court included a finding of fact as to the time expended on the case, skill required, customary fee, and experience of the attorney:

> 54. As of December 15, 2017, Plaintiff had incurred litigation expenses in the amount of $45,753.00. Plaintiff's attorney or members of her staff billed in excess of 231 hours in this matter. Plaintiff's attorney charges $275.00 per hour for her in-court time and $250.00 per hour for in-office time and her associates charge $225.00 per hour for in-court time and $200.00 per hour for in-office time. Plaintiff's paralegals time is billed at $110.00 per hour. These rates and fees are reasonable for Plaintiff's attorneys' experience.

The trial court provided several findings in support of its award of attorney's fees to Mother but did not provide a finding explaining its decision to award substantially less than Mother's incurred litigation expenses. We conclude that without such an explanation, the order is insufficient for our review. Therefore, we vacate this portion of the 2018 Permanent Order and remand for additional findings.

VACATED AND REMANDED.

Judges COLLINS and GRIFFIN concur.