An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-819

Filed 6 May 2026

Onslow County, No. 23CVD000475-660

CIARA HUNTER, Plaintiff,

v.

JOHN HUNTER, III, Defendant.

Appeal by plaintiff from an order entered 3 February 2025 by Judge James W. Bateman, III in Onslow County Superior Court. Heard in the Court of Appeals 26 February 2026.

> *Triangle Divorce Lawyers, by Scott E. Allen, for the plaintiff-appellant.*
>
> *John Hunter, III, pro se defendant-appellee.*

WOOD, Judge.

Ciara Hunter ("Plaintiff") appeals from an order of Child Custody and argues the trial court erred by (1) failing to protect the minor children from Defendant because it did not make the findings necessary to grant joint custody and similarly, (2) failing to make sufficient findings of fact to support the custody order. After careful review of the record, we vacate the order and remand to the trial court for

further findings of fact.

## I.    Factual and Procedural Background

Plaintiff and John Hunter, III ("Defendant") were married on 10 October 2015 and resided in Onslow County during their marriage.  Two children were born of the marriage, in 2017 and 2022.  The couple separated on 28 December 2022.

Plaintiff filed a complaint on 15 February 2023 for equitable distribution, post separation support, alimony, child custody, child support, attorney fees and an emergency temporary restraining order.  Specifically, Plaintiff requested joint legal custody and primary physical custody with Defendant receiving visitation.

On 28 March 2023, Defendant filed an answer and counterclaim to Plaintiff's complaint requesting joint legal and physical custody of the children.

Also, on 28 March 2023, the district court entered a consent order establishing that Plaintiff and Defendant had agreed to temporary joint legal custody of the children with Plaintiff retaining primary physical custody and Defendant having visitation Tuesday at 6 p.m. until Thursday at 6 p.m. every other week and Thursday at  6 p.m. until Sunday at 6 p.m. on alternating weeks.  Exchanges were to take place at the Jacksonville Public Safety Center and the parties were to stay five feet apart at all times.  Communication was to take place through Our Family Wizard.

On 30 May 2023, Plaintiff filed a reply to Defendant's counterclaims.  On 29 June 2023, both parties agreed to another temporary custody order that maintained

the status quo but changed the exchange location to Barnes and Noble at the Jacksonville Mall.

On 5 July 2023, the district court entered a temporary restraining order stating in pertinent part, "Defendant shall not cancel the health insurance plan for Plaintiff's business and/or Plaintiff" and "Plaintiff shall pay such health insurance premium costs through the regular invoice procedure to provide notice to Defendant of her payment."

On 29 January 2024, Plaintiff filed a Motion For Order to Show Cause and Motion for Contempt against Defendant alleging that over the last six months he had been late for custody exchanges eight times and did not show up once; parked closer than five feet to her once; had failed to complete the entire food/diaper log for the younger child on five dates; had been late with his payments by one to three days ten times; and had not allowed nightly phone calls five times and interrupted calls four times.

On 15 April 2024, the parties were granted an absolute divorce, and the district court entered an order stating, "Defendant shall continue to provide to Plaintiff health insurance through the Hunter Family Co, Inc. at the same coverage levels as the parties currently have in effect. Such coverage shall be continued until the first of the following: A. Plaintiff has employer provided coverage; or B. This matter can be heard on Plaintiff's motion."

On 31 October 2024, Plaintiff filed a Motion to Modify alleging that "since the entry of the July 29, 2023 memorandum of judgment there has been a substantial and material change in the circumstances affecting the best interest of the minor children . . . " and requesting the court suspend Defendant's custodial time and award Plaintiff sole and exclusive care, custody and control of the children. Plaintiff alleged issues with Defendant leaving the children unattended; noted that the Department of Social Services ("DSS") was involved with the family; stated Defendant failed to get one child medical treatment for a finger burn and ignored the other child's ear infection; alleged that Defendant left the children alone in a hotel room causing law enforcement to become involved; and stated he has a history of ignoring court orders regarding health insurance and not communicating on Our Family Wizard as needed to be up to date on the children's health issues.

The issue of child custody came on for hearing on 27 January 2025. Both Plaintiff and Defendant testified. The trial court also accepted into the record DSS records, texts, Our Family Wizard messages and history, and information from the children's schools.

On 3 February 2025, the trial court entered a permanent custody order with fifteen findings of fact and granted joint legal and physical custody to the parties with weekly exchanges conducted via school drop-off and pick-up. The trial court also included modifications for holiday time. On 11 March 2025, Plaintiff filed notice of appeal from this order.

## II.   Analysis

### A. Jurisdiction

The trial court filed the custody order on 3 February 2025. However, Plaintiff asserts the order did not appear to be entered into eCourts until 11 February 2025 and was not received by Plaintiff until that day. In addition, the court file does not contain a certificate of service for the custody order. Our Courts have stated "Where there is no certificate of service in the record showing *when* appellant was served with the trial court judgment, *appellee* must show that appellant received actual notice of the judgment more than thirty days before filing notice of appeal in order to warrant dismissal of the appeal." *Adams v. Langdon*, 264 N.C. App. 251, 255, 826 S.E.2d 236, 239 (2019) (cleaned up). Therefore, "[u]nder *Brown,* unless the appellee argues that the appeal is untimely, and offers proof of actual notice, we may not dismiss." *Id.* Defendant-appellee makes no such argument or offering; therefore, Plaintiff's Notice of Appeal from that Order is deemed timely filed. As a permanent custody order, appeal lies with this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(2).

### B. Custody Order

Plaintiff asserts the trial court erred by (1) failing to protect the minor children from Defendant because it did not make the necessary findings to grant joint custody, and (2) failing to make the findings necessary to support the custody order. Both issues present essentially one underlying argument: "the trial court did not even make any findings about the evidence presented." We agree.

When a trial court sits without a jury, this Court reviews the trial court's order to determine "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings. Unchallenged findings of fact are binding on appeal."

*Morrow v. Morrow*, 300 N.C. App. 60, 63, 919 S.E.2d 864, 868 (2025), *review denied*, 924 S.E.2d 826 (2026) (quoting *Burger v. Smith*, 243 N.C. App. 233, 236, 776 S.E.2d 886, 888-89 (2015)). "Whether the trial court's findings of fact support its conclusions of law is reviewable *de novo*." *Aguilar v. Mayen*, 293 N.C. App. 474, 480, 901 S.E.2d 662, 667 (2024).

In North Carolina, during consideration of child custody, N.C. Gen. Stat. §50-13.2(a) requires:

(a) An order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child. In making the determination, *the court shall consider all relevant factors including acts of domestic violence between the parties, the safety of the child, and the safety of either party from domestic violence by the other party.* An order for custody must include written findings of fact that reflect the consideration of each of these factors and that support the determination of what is in the best interest of the child. Between the parents, whether natural or adoptive, no presumption shall apply as to who will better promote the interest and welfare of the child. Joint custody to the parents shall be considered upon the request of either parent.

N.C. Gen. Stat. § 50-13.2 (emphasis added). This Court has clearly stated, "[a]lthough a custody order need not, and should not, include findings as to each piece of evidence presented at trial, it must resolve the material, disputed issues raised by the evidence." *Carpenter v. Carpenter*, 225 N.C. App. 269, 273, 737 S.E.2d 783, 787 (2013).

> Findings of fact as to the characteristics of the competing parties must be made to support the necessary conclusion of law. These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child.

*Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978). "A custody order will also be vacated where the findings of fact are too meager to support the award." *Dixon v. Dixon,* 67 N.C.App. 73, 77, 312 S.E.2d 669, 672 (1984).

In the case *sub judice,* the trial court entered fifteen findings of fact in the entire order. Of those fifteen findings, only six findings could be said to somewhat concern the children's best interest, while the remaining nine contained primarily demographic facts of the case. The pertinent findings included:

> 6. That both of the parties reside in Jacksonville, North Carolina and have residences that are safe and suitable for the minor children.

> 7. That since March 28, 2023 the parties have operated under the provisions of a temporary order which awards the Plaintiff nine (9) and the Defendant (5) overnights every two weeks with five exchanges of the minor children during each two week period.

8. That the children are well adjusted to living in both of the parties households, although the minor child, Chloe, has experienced some confusion from time to time regarding the frequent exchanges and the frequent exchanges have caused periodic disruptions in Chloe's extracurricular activities.

. . .

11. That pursuant to the temporary order, the parties have utilized the Our Family Wizard application to organize the children's activities and communicate with each other regarding the children.

. . .

13. That the Plaintiff has had a very flexible schedule since the parties' separation and has been extremely attentive to ensuring all of her children's needs are met.

14. That the Defendant is a self-employed Marine veteran and therefore has the ability to set his own schedule. That the Defendant has been attentive to, and has met the needs of the minor children when they have been in his care.

Of the six semi-relevant findings, findings 7 and 11 merely recite the previous temporary custody arrangements, leaving only four findings concerning the children's best interests. On review, all that is discernable regarding the children's best interests is (1) both parents have safe and suitable residences, (2) the children are fairly well adjusted although there is some confusion due to frequent exchanges, and (3) both parents ensure the needs of the minor children are met while in their care.

Based on testimony at the hearing and the filing of a Motion to Show Cause

and a Motion to Modify, both parents raised significant issues with one another. The trial court failed to address most, if not all, of the significant disputes between the parties including: allegations of domestic violence, four DSS investigations, law enforcement involvement, allegations of failures to follow court orders, allegations of parental alienation, and allegations of weaponization of DSS and law enforcement. "The findings of fact should resolve the disputed issues clearly and relate these issues to [the children's] welfare; the conclusions of law must rest upon the findings of fact." *Carpenter*, 225 N.C. App. at 279, 737 S.E.2d at 790.

Without detailed findings of fact, there is nothing from which we can determine that the trial court's award of joint physical custody is in the children's best interest. "[A] custody order is fatally defective where it fails to make detailed findings of fact from which an appellate court can determine that the order is in the best interest of the child[.]" *Dixon*, 67 N.C. App. at 76–77, 312 S.E.2d at 672.

Consequently, we must vacate and remand the order for the trial court to make additional findings of fact to resolve the material disputes between the parties and to make corresponding conclusions of law to support the trial court's determination that joint custody is in the children's best interest.

> Our decision to remand this case for further evidentiary findings is not the result of an obeisance to mere technicality. Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support findings; findings must support conclusions; conclusions must support the

judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Carpenter*, 225 N.C. App. at 279, 737 S.E.2d at 790 (quoting *Coble v. Coble,* 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980).

The record reflects there was ample testimony and evidence presented at trial to support the trial court's conclusions of law regarding the best interest of the children. However, on remand the trial court may at its discretion hear additional evidence if it deems it necessary to determine the children's best interest.

### III. Conclusion

The trial court failed to make findings of fact necessary to resolve the material disputes between the parties and to support the conclusions of law regarding custody. Therefore, we vacate the order and remand to the trial court for further findings of fact.

VACATED AND REMANDED.

Judges HAMPSON and MURRY concur.

Report per Rule 30(e).