TONY RAY SMITH, Plaintiff v. STACI DAY BARBOUR and BILAL KANAWATI,
Defendants v. COLLENE BARBOUR and STACY BARBOUR, Intervenors

No. COA07-1083

(Filed 3 February 2009)

**1. Child Support, Custody, and Visitation— custody—standard to be applied—prior order—visitation undecided—best interests**

The trial court did not err in a contentious child custody proceeding by applying the "best interests" standard when deciding a motion to change custody. Although plaintiff argued that a prior custody order was permanent as to custody and temporary as to visitation so that the "substantial change of circumstances" standard" should apply, opinions have consistently treated custody orders as a whole.

**2. Child Support, Custody, and Visitation— grandparents—intervention—visitation undecided and custody in issue**

Grandparents had standing to seek intervention in a child custody proceeding where a prior order had left visitation undetermined. Visitation is part of custody between the parents, and a trial court may order visitation by grandparents in its discretion when custody is an ongoing issue.

**3. Child Support, Custody, and Visitation— child evaluation—apportionment of costs**

The trial court did not abuse its discretion by reapportioning the costs associated with child centered evaluation in a contentious custody action. The court had found that plaintiff delayed the evaluation and it cannot be said that the apportionment of the bill was manifestly unreasonable.

**4. Child Support, Custody, and Visitation— grandparents—attorney fees**

The trial court did not err in a contentious child custody action by ordering plaintiff to pay a portion of the grandparents'

attorney fees. The amount did not exceed the amount in the supporting affidavits and plaintiff did not object to the affidavits or to the grandparents' testimony about their attorney fees; plaintiff had adequate notice to contest the motion; the findings were sufficient and were supported by the evidence; and the findings were sufficient to establish plaintiff's ability to pay the fees.

Appeal by plaintiff from orders entered 2 May 2006 and 18 December 2006 by Judge Donna Stroud in Wake County District Court. Heard in the Court of Appeals 3 March 2008.

*Hatch, Little & Bunn, LLP, by Elizabeth T. Martin; and Wake Family Law Group, by Helen M. Oliver, for plaintiff-appellant.*

*Staci D. Barbour pro se defendant-appellee.*

*No brief filed on behalf of defendant-appellee Kanawati.*

*Sandlin & Davidian, PA, by Deborah Sandlin and Debra A. Griffiths, for intervenors-appellees.*

GEER, Judge.

Plaintiff Tony Ray Smith appeals from orders modifying custody of his daughter ("the minor child"), granting the maternal grandparents' motion to intervene, reallocating the sharing of the costs of a court-ordered evaluation of the child, and requiring the father to pay a portion of the grandparents' attorneys' fees. Mr. Smith primarily contends that the trial court erred in concluding that an earlier custody order was temporary in nature and applying a best interests standard when revisiting the court's prior award to the father of primary legal and physical custody of the minor child. Because, however, the prior custody order left open the issue of visitation for determination in a hearing three months later, we agree with the trial court that that order was temporary. Accordingly, the trial court properly applied a best interests standard in rendering its 18 December 2006 order. We are unpersuaded by Mr. Smith's remaining arguments regarding the intervention order, the evaluation costs, and the attorneys' fees and, therefore, affirm each of the trial court's orders.

## Facts

The minor child, who is Mr. Smith's biological daughter, was born while Ms. Barbour was married to, but separated from, Bilal

Kanawati.[1] Ms. Barbour and Mr. Kanawati themselves have a daughter who was born in 1993. In June 1999, while Ms. Barbour was pregnant with the minor child, she took her other daughter and fled to Nebraska, not telling Mr. Kanawati, Mr. Smith, or anyone else where she had gone. She used multiple assumed names to avoid apprehension by law enforcement. She was eventually located in October 1999, and Mr. Kanawati obtained legal and physical custody of their daughter.

After Ms. Barbour was discovered in Nebraska, she contacted Mr. Smith and asked for support during her pregnancy. Mr. Smith traveled to Nebraska several times and was present at the child's birth. Ms. Barbour named Mr. Smith as the minor child's father on her birth certificate and allowed him to choose her middle name.

After the child's birth, Ms. Barbour moved back to North Carolina, living first with Mr. Smith for several days and then moving in with her parents. Ms. Barbour allowed Mr. Smith limited visitation from the child's birth in November 1999 until May 2001. In December 2000, Mr. Smith asked for increased visitation. On 3 January 2001, Ms. Barbour filed a motion for a domestic violence protective order against Mr. Smith, although that action was subsequently dismissed.

On 23 February 2001, Mr. Smith filed this action for custody. On the same date, he filed a petition to legitimate the minor child in Wake County Superior Court. Although Ms. Barbour disputed that Mr. Smith was the minor child's father, the superior court, on 6 June 2002, entered an order adjudicating Mr. Smith to be the father and legitimated the minor child. This Court ultimately affirmed that order in *Smith v. Barbour*, 167 N.C. App. 371, 605 S.E.2d 267, 2004 N.C. App. LEXIS 2116, 2004 WL 2792518 (Dec. 7, 2004) (unpublished), *disc. review denied*, 359 N.C. 322, 611 S.E.2d 418 (2005).

From August 2001 through August 2004, numerous other proceedings took place in district court—and, in one instance, superior court—that are not directly pertinent to the issues on appeal. We note that the trial court in this proceeding found:

> The continuing litigation between the parties, which now also includes the Intervenors has clearly has [sic] been very harmful for the minor child. Defendant's attempts of bringing pro se cases

---

1. Mr. Kanawati is a defendant in this matter solely because he was married to Ms. Barbour at the time the minor child was born and is not affected by the orders on appeal.

SMITH v. BARBOUR

[195 N.C. App. 244 (2009)]

of various types against the Plaintiff which began upon his informing her that he wanted to have regular unsupervised visitation with [the minor child], in December of 2000, have caused Plaintiff to have to spend an incredible amount of time and money simply in order to establish himself as [the minor child's] father and to see [the minor child]. Several of the cases Defendant has brought against the Plaintiff—the federal lawsuit being the best example—were clearly groundless and are intended only to harass the Plaintiff and increase his litigation costs, as noted in the 2005 orders.

Over the period 24 through 30 August 2004, the trial court conducted a hearing on Mr. Smith's motions for permanent custody, attorneys' fees, and sanctions. Based on that hearing, the trial court entered a 44-page order on 20 April 2005, determining that Mr. Smith "is a fit and proper parent to be awarded primary physical and legal custody of the minor child" and that Ms. Barbour "is not a fit and proper parent to be awarded physical and legal custody of the minor child at this time." Based on its findings, the trial court awarded permanent physical and legal custody to Mr. Smith.

The trial court also ordered Ms. Barbour to submit to a complete psychological evaluation if she wanted to be considered for visitation and ordered a child-centered evaluation that would, among other things, "address the issue of the feasibility and frequency of visitation that would be in the best interests of the minor child to have with the Defendant and her parents." The court indicated in its order that once it had received copies of the evaluations, it would notify the parties and, upon motion, would "set the issue of visitation for hearing." The trial court further specified that "[f]or the purposes of this Order this Court retains jurisdiction to determine the frequency and conditions under which the Defendant and her parents may visit with the minor child, and said visitation shall be Ordered based upon this evaluation and other competent evidence in a hearing solely on this issue of visitation to be scheduled not later than July 15, 2005." The trial court provided that pending the court's decision regarding visitation, Mr. Smith had authority to arrange supervised visitation with Ms. Barbour or her family if he determined that it would benefit the child.

Ms. Barbour filed a notice of appeal from the 20 April 2005 order. Mr. Smith, however, successfully moved to dismiss the appeal on the grounds that the order did not constitute a final judgment.

On 13 July 2005, the grandparents filed a motion to intervene. The trial court granted that motion in an order entered 2 May 2006. On 25 August 2006, the grandparents moved for emergency temporary custody of the minor child, alleging that Mr. Smith had refused to take her to the doctor when she injured her arm while on vacation. The trial court entered an order that day allowing the motion and granting temporary physical and legal custody of the minor child to the grandparents.

On the same date, Ms. Barbour moved to modify the custody order. She further moved for the trial court to shorten the notice period for her motion to modify so that it could be heard at a previously scheduled hearing on 28 August 2006. At the hearing beginning on 28 August 2006, the trial court granted Ms. Barbour's motion to shorten the notice period and heard evidence regarding modification of the custody award.

The trial court entered its 51-page custody order on 18 December 2006. After determining that the 20 April 2005 order was a temporary order, it concluded that custody would be reconsidered based on the "best interests of the child" standard. The trial court, however, also noted that even if it had determined that the 20 April 2005 order was a permanent order, "the end result would be the same" after application of the "substantial change in circumstances" standard. The trial court concluded that both parents were fit and proper persons to have custody of the minor child and that it was in the best interests of the child for (1) the parents to have joint legal and physical custody (with the specifics set out in the order) and (2) the grandparents to have specified visitation privileges.

In a separate order also entered on 18 December 2006, the trial court ordered Mr. Smith to pay 40% of the cost of the child-centered evaluation, while Ms. Barbour and the grandparents were each required to pay 30% of the cost. In addition, the trial court ordered Mr. Smith to pay $40,000.00 of the grandparents' attorneys' fees. Mr. Smith has timely appealed to this Court from (1) the 2 May 2006 order granting intervention, (2) the 18 December 2006 custody order, and (3) the 18 December 2006 attorneys' fees and expert costs order.

## Custody Order

[1] In arguing for reversal of the 18 December 2006 custody order, Mr. Smith first contends that the trial court erred in determining that the 20 April 2005 custody order was a temporary order. According to defendant, since it was a permanent order, the trial court was re-

SMITH v. BARBOUR

[195 N.C. App. 244 (2009)]

quired to apply the "substantial change in circumstances" standard in determining whether to modify custody.

Although the 20 April 2005 order was entitled "Permanent Custody" order, the trial court's designation of an order as "temporary" or "permanent" is not binding on an appellate court. *Lamond v. Mahoney*, 159 N.C. App. 400, 403, 583 S.E.2d 656, 658-59 (2003). Instead, whether an order is temporary or permanent in nature is a question of law, reviewed on appeal de novo. *Brewer v. Brewer*, 139 N.C. App. 222, 228, 533 S.E.2d 541, 546 (2000).

As this Court has previously held, "an order is temporary if either (1) it is entered without prejudice to either party[;] (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings was reasonably brief; or (3) the order does not determine all the issues." *Senner v. Senner*, 161 N.C. App. 78, 81, 587 S.E.2d 675, 677 (2003). In this case, the 20 April 2005 order meets both the second and third prongs of the test.

There is no dispute that the trial court did not determine all of the issues before it since it did not decide Ms. Barbour's right to visitation. The order expressly stated that "the issue of visitation" would be set for hearing only after the ordered psychological evaluations had been completed and specified that the trial court "retain[ed] jurisdiction to determine the frequency and conditions under which the Defendant and her parents may visit with the minor child . . . ." The order provided for a hearing on "this issue of visitation to be scheduled not later than July 15, 2005." This date qualifies as a clear and specific reconvening time after a time interval that was reasonably brief.

Mr. Smith argues, however, citing *Lamond*, that the order should be viewed as being permanent as to custody, but temporary as to visitation. According to Mr. Smith, the fact that the order is, in that circumstance, still an interlocutory order for purposes of appeal is immaterial to the determination whether the order is permanent as to a particular issue. *Lamond* does not, however, support Mr. Smith's position that an order may be partially permanent and partially temporary.

*Lamond* specifically pointed out:

This Court has addressed the question whether a custody order is temporary or permanent when determining if an appeal from the order is interlocutory. Generally, a party is not entitled

to appeal from a temporary custody order. In that context, this Court has held that a temporary or interlocutory custody order "is one that does not determine the issues, but directs some further proceeding preliminary to a final decree."

159 N.C. App. at 403, 583 S.E.2d at 659 (quoting *Dunlap v. Dunlap*, 81 N.C. App. 675, 676, 344 S.E.2d 806, 807, *disc. review denied*, 318 N.C. 505, 349 S.E.2d 859 (1986)). The Court then applied the test used in determining whether a custody order is interlocutory in order to decide whether the order was permanent or temporary for purposes of determining which standard—"best interests" or "substantial change in circumstances"—should apply. *Id.* at 403-04, 583 S.E.2d at 659. After determining that the order left open issues—visitation—and provided a further review hearing would be held in a period of time reasonably brief under the circumstances, this Court concluded that the trial court properly applied the best interests standard. *Id.* at 404, 583 S.E.2d at 659.

Our appellate decisions have consistently considered whether a custody "order" as a whole was temporary or final rather than breaking down the parts of that order. *See Simmons v. Arriola*, 160 N.C. App. 671, 675, 586 S.E.2d 809, 811 (2003) ("The initial order in the present case does not specify visitation periods and, therefore, is incomplete and cannot be considered final. The language providing for regular review coupled with the court's failure to completely determine the issue of visitation periods for defendant persuades us that the 17 July 1998 order was a temporary order.").[2] Significantly, adoption of Mr. Smith's position that an order may be permanent as to some issues and temporary as to others would render meaningless the *Senner* holding that an order should be deemed temporary if "the order does not determine all the issues." 161 N.C. App. at 81, 587 S.E.2d at 677.

Moreover, applying the test for whether an order is interlocutory for appeal purposes—as *Lamond* does—is logical. It ensures that a party has had an opportunity to obtain review of the trial court's decision on an issue before the more stringent "substantial change in circumstances" standard becomes applicable. *Cf. Cox v. Cox*, 133 N.C. App. 221, 233, 515 S.E.2d 61, 69 (1999) ("The trial court's refusal to

---

2. Because the Court in *Lamond* was only addressing a motion to change visitation—with legal and physical custody not being at issue—the opinion's conclusion "that the 25 July 2001 order was not a permanent order with respect to visitation," 159 N.C. App. at 404, 583 S.E.2d at 659, does not require the conclusion that the order was permanent as to one issue and temporary as to another issue.

enter a permanent order has deprived defendant of appellate review and the refusal was error.").

Accordingly, we hold that the 20 April 2005 custody order was a temporary order. The trial court, therefore, did not err in applying the "best interests" standard when deciding Ms. Barbour's motion to change custody. Since Mr. Smith's remaining arguments regarding the 18 December 2006 custody order all presume that the "substantial change in circumstances" standard applies, we need not address them. We, therefore, affirm the 18 December 2006 order.

### Order Allowing Intervention

**[2]** In its order allowing intervention, the trial court concluded that the grandparents were *de facto* parties and should, therefore, be joined as provided in *Sloan v. Sloan*, 164 N.C. App. 190, 595 S.E.2d 228 (2004). Alternatively, the trial court found that "because there is a pending issue before this court regarding future visitation with the requesting Intervenors, there is a pending matter before this court that would also allow the requesting Intervenors to become parties to this action." We uphold the order granting intervention on the latter ground.

Our Supreme Court in *McIntyre v. McIntyre*, 341 N.C. 629, 634, 461 S.E.2d 745, 749 (1995), explained that "the legislature intended to grant grandparents a right to visitation only in those situations specified in these three statutes," citing N.C. Gen. Stat. §§ 50-13.2(b1), 50-13.5(j), and 50-13.2A. The pertinent statute in this case is N.C. Gen. Stat. § 50-13.2(b1), which provides: "An order for custody of a minor child may provide visitation rights for any grandparent of the child as the court, in its discretion, deems appropriate." As this Court explained in *Fisher v. Gaydon*, 124 N.C. App. 442, 446, 477 S.E.2d 251, 253 (1996), *disc. review denied*, 345 N.C. 640, 483 S.E.2d 706 (1997), N.C. Gen. Stat. § 50-13.2(b1) applies only when custody of the minor children is an ongoing issue. That requirement is met "only when the custody of a child is 'in issue' or 'being litigated.'" *Fisher*, 124 N.C. App. at 446, 477 S.E.2d at 253.

In this case, it is undisputed that the 20 April 2005 custody order did not address visitation by Ms. Barbour, but left that issue to be resolved at a later date following further psychological evaluations. It is well-established that, at least as between parents, "visitation" is part of custody. *See* N.C. Gen. Stat. § 50-13.1(a) ("Unless a contrary intent is clear, the word 'custody' shall be deemed to include custody or visitation or both."); *Clark v. Clark*, 294 N.C. 554, 575-76, 243

S.E.2d 129, 142 (1978) ("Visitation privileges are but a lesser degree of custody."); *Charett v. Charett*, 42 N.C. App. 189, 193, 256 S.E.2d 238, 241 ("Custody and visitation are two facets of the same issue."), *disc. review denied*, 298 N.C. 294, 259 S.E.2d 299 (1979).[3] Thus, because the issue of Ms. Barbour's visitation was still pending, the custody of the child was still "in issue" and was "being litigated" by the parents, as required by *Fisher*, 124 N.C. App. at 446, 477 S.E.2d at 253.

The grandparents, therefore, had standing to seek intervention under N.C. Gen. Stat. § 50-13.2(b1). Because of this conclusion, we need not address Mr. Smith's arguments relating to whether the grandparents were *de facto* parties. Mr. Smith makes no other argument warranting reversal of the order allowing intervention. That order is, therefore, affirmed.

## Apportionment of Evaluation Costs

[3] Mr. Smith next challenges the trial court's reapportionment of the costs associated with the court-ordered child-centered evaluation in its 18 December 2006 order. In the 20 April 2005 order, the trial court directed Mr. Smith to arrange for a psychological evaluation of the minor child and appointed Dr. Ginger Calloway to conduct the evaluation pursuant to Rule 706 of the Rules of Evidence. In the 18 December 2006 order, the trial court found:

> Additionally, Plaintiff delayed the child centered evaluation by failing to show up for scheduled appointments and by coming to appointments without being prepared and he refused to provide many documents to Dr. Calloway in a timely manner. Intervenors had to subpoena many of the documents requested. Intervenors paid $15,394.64 of Dr. Calloway's bill. The total bill was $26,543.86. It is unfair that Intervenors, who are the grandparents of this child, bear more than one-half the cost of Dr. Calloway's evaluation. Plaintiff paid $6583.57 and Defendant paid $4,565.65. Dr. Calloway's bill should be reapportioned such that Intervenors pay 30%, Plaintiff pays 40%, and Defendant pays 30%.

Because Mr. Smith did not assign error to this finding of fact, it is binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

3. Mr. Smith asserts that "this was not an on-going custody case" because "the custody of the child [was] determined, and the jurisdiction of the trial court retained for the sole issue of visitation." This contention, however, disregards the fact that our legislature has defined custody as including visitation when the custody dispute is between parents.

We first observe that Mr. Smith has cited no legal authority to support his position that the trial court erred in making the reapportionment even though he claims, citing a gift tax case, that the issue presents a question of law requiring de novo review. Under Rule 28(b)(6) of the Rules of Appellate Procedure, "[a]ssignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned."

In any event, trial courts have the authority to appoint expert witnesses pursuant to Rule 706(a) of the Rules of Evidence. *See Sharp v. Sharp*, 116 N.C. App. 513, 532, 449 S.E.2d 39, 49, *disc. review denied*, 338 N.C. 669, 453 S.E.2d 181 (1994). Rule 706(b) provides for the compensation of court-appointed experts: "Expert witnesses so appointed are entitled to reasonable compensation in whatever sum the court may allow. . . . *[T]he compensation shall be paid by the parties in such proportion and at such time as the court directs*, and thereafter charged in like manner as other costs." N.C.R. Evid. 706(b) (emphasis added).

The trial court's award of reasonable compensation and its apportionment among the parties is reviewed for abuse of discretion. *Sharp*, 116 N.C. App. at 533, 449 S.E.2d at 50. Based on the trial court's findings in this case that Mr. Smith delayed the evaluation by failing to attend appointments, coming unprepared to appointments, and refusing to provide documents in a timely manner, we cannot conclude that the trial court was manifestly unreasonable in making Mr. Smith responsible for 40% of the bill rather than 33 1/3%, as would be the case if the bill were equally divided among the parties. *See id.* at 533, 449 S.E.2d at 50 (upholding order in which trial court reallocated "the bulk" of an expert's fee to plaintiff because "plaintiff was slow in getting information to [the expert's] firm and that after receiving some information, the firm would often have to ask plaintiff to supply additional information, which plaintiff provided, 'but not in the most expeditious manner' ").

It appears that Mr. Smith is contending that he should not be responsible for 40% because the evaluation exceeded the scope of the 20 April 2005 order. He cites to nothing in the record that supports this contention and, in any event, we have already concluded that the 20 April 2005 order did not preclude further consideration of custody issues.

Additionally, Mr. Smith claims that his portion of the total fees wrongly "included Defendant-Barbour's evaluation by the child's psy-

chological evaluator" because Ms. Barbour's initial evaluation was not adequate for the trial court's purposes. In support of that contention, Mr. Smith cites only to a 10 October 2005 order requiring the additional evaluation. That order, however, provides: "Defendant Barbour shall undergo further psychological evaluation by Dr. Ginger Calloway as soon as such can be scheduled by Dr. Calloway *and she shall pay the costs of such evaluation.*" (Emphasis added.)

We see no basis for concluding that the trial court abused its discretion in its allocation of the costs of Dr. Calloway's evaluation. We, therefore, affirm that portion of the 18 December 2006 order.

### Attorneys' Fees

[4] Mr. Smith's final argument on appeal is that the trial court erred in ordering him to pay a portion of the grandparents' attorneys' fees. On 18 August 2005, the grandparents filed a motion requesting that both Mr. Smith and Ms. Barbour be ordered to pay the grandparents' "increased attorneys fees." Of the $97,109.50 in attorneys' fees the grandparents had incurred, the trial court ordered Mr. Smith to pay $40,000.00.

Mr. Smith first argues that the trial court's order exceeded the fees requested by the grandparents because the motion sought only the fees increased by virtue of his failure to cooperate with Dr. Calloway's evaluation. The attorneys' fees affidavits submitted in support of the motion, however, were not so limited, but rather detailed the hours spent and costs incurred in attempting to gain visitation with the minor child. Mr. Smith did not object to these affidavits or to testimony by the grandparents regarding their attorneys' fees that went beyond those fees connected with Dr. Calloway's evaluation.

It is also apparent from the record that Mr. Smith understood that fees were sought because of his failure to cooperate with the grandparents regarding visitation. His written "closing argument" stated: "Mr. Smith should not be required to pay any portion of the Barbours [sic] attorney's fees, as he was following a number of overlapping and complicated orders of this Court and *was not denying them visitation or contact with [the minor child],* he does not have the means to pay the cost of this and the many other court actions that he has had to participate in relative to this case. *Further, the motion to intervene was filed a mere two weeks after the June 30, 2005 letter that requested every other weekend visitation.*" (Emphasis added.) Accordingly, we conclude that Mr. Smith had adequate notice to contest the grandparents' motion for attorneys' fees.

Mr. Smith next argues that the trial court failed to make sufficient findings of fact to support the award of attorneys' fees. In custody proceedings, attorneys' fees may be awarded pursuant to N.C. Gen. Stat. § 50-13.6 (2007), which provides in pertinent part:

> In an action or proceeding for the custody or support, or both, of a minor child, including a motion in the cause for the modification or revocation of an existing order for custody or support, or both, the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit.

North Carolina appellate courts have "interpreted this provision as requiring that before attorney's fees can be taxed in an action for custody . . . , the facts required by the statute—that the party seeking the award is (1) an interested party acting in good faith, and (2) has insufficient means to defray the expense of the suit—must be both alleged and proved." *Taylor v. Taylor*, 343 N.C. 50, 54, 468 S.E.2d 33, 35 (1996). In addition to these findings mandated by N.C. Gen. Stat. § 50-13.6, "the record must contain additional findings of fact upon which a determination of the requisite reasonableness [of the attorneys' fees] can be based, such as findings regarding the nature and scope of the legal services rendered, the skill and time required, the attorney's hourly rate, and its reasonableness in comparison with that of other lawyers." *Cobb v. Cobb*, 79 N.C. App. 592, 595, 339 S.E.2d 825, 828 (1986). If these requirements have been satisfied, "[t]he amount of the award is within the discretion of the trial judge and will not be reversed in the absence of an abuse of discretion." *Id.* at 596, 339 S.E.2d at 828.

Based upon our review of the order, we hold that it includes sufficient findings of each of the above elements. Although Mr. Smith argues that the trial court's findings of fact simply repeated the statutory requirements and thus were conclusory, almost identical findings of fact were held sufficient in *Cunningham v. Cunningham*, 171 N.C. App. 550, 566-67, 615 S.E.2d 675, 686-87 (2005). Further, these findings of fact are adequately supported by the evidence submitted at trial and by the affidavit filed by the grandparents' attorney. While Mr. Smith points to evidence that would support his contention that the grandparents were not entitled to fees, only the trial court may determine the credibility and weight of the evidence and what inferences to draw from the evidence.

**SMITH v. BARBOUR**

[195 N.C. App. 244 (2009)]

Finally, Mr. Smith argues that the trial court failed to make a finding of fact regarding his ability to pay the fees awarded in the order. In finding of fact 26, however, which was not assigned as error, the trial court found:

> Plaintiff is self employed and earns a substantial income. As of the hearing, his financial affidavit shows that he is expending approximately $6,000 per month for his individual expenses. Additionally, there was no evidence of any debt in Plaintiff's name other than his mortgage. Plaintiff pays cash for many things, including his recent vacation to a dude ranch that involved a two week trip, including airfare and hotels in the western part of this country. Plaintiff's financial affidavit and testimony leaves the court with little choice but to infer that he [is] earning substantially more than reported on his financial affidavit and substantially more than he is expending monthly.

The court then found further "[t]hat the parties are able to comply with the provisions of this order." These findings are sufficient to establish Mr. Smith's ability to pay the attorneys' fees.

Based upon our review of the record and the trial court's order, we find Mr. Smith's final contention that the attorneys' fee award was an improper attempt to punish him to be unpersuasive. Accordingly, we hold that the trial court did not abuse its discretion in requiring Mr. Smith to pay $40,000.00 of the grandparents' attorneys' fees. The attorneys' fee award is, therefore, affirmed.

## Conclusion

For the foregoing reasons, we affirm the trial court's 2 May 2006 and 18 December 2006 orders. Going forward, we urge the parties to be mindful of the trial court's finding that "[t]he continuing litigation between the parties, which now also includes the Intervenors . . . clearly has been very harmful for the minor child."

Affirmed.

Chief Judge MARTIN and Judge ROBERT C. HUNTER concur.