An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1078

Filed 20 May 2026

Onslow County, No. 21CVD002372-660

TERESA CRAIG and JOHN CRAIG, Plaintiffs,

v.

NICOLE SADLER, NEAL SADLER, CHRISTOPHER JACK THOMPSON, MICHAEL BRANDON HANNA, and JENNIFER COX, Defendants,

v.

JOANNE ARROWOOD, Intervenor.

Appeal by Plaintiffs from Orders entered 6 September 2023 and 20 December 2023 by Judge William P. Shanahan, III, in Onslow County District Court. Heard in the Court of Appeals 16 October 2025.

> *Robertson Law, PLLC, by Mary Elizabeth S. Robertson, for Plaintiff-Appellants.*

> *No briefs filed for Defendant-Appellees.*

> *No brief filed for Intervenor.*

HAMPSON, Judge.

**Factual and Procedural Background**

Teresa Craig and John Craig (Plaintiffs) appeal from two related orders: an Order entered 6 September 2023 granting temporary legal and physical custody of two minor children to Defendant Nicole Sadler and an Order entered 20 December 2023 denying Plaintiffs' Rule 60(b) Motion for Relief.[1] The Record before us tends to reflect the following:

Amy, born in 2017, and Esther, born in 2020, are the biological children of Defendant Christopher Jack Thompson (Defendant Thompson).[2] Their mother, Kayla Thompson, died in July 2021. Plaintiff Teresa Craig is the biological mother of the late Kayla Thompson and the maternal grandmother of Amy and Esther. Plaintiff Teresa Craig is married to Plaintiff John Craig. Plaintiff John Craig and Defendant Nicole Sadler are the biological parents of Defendant Thompson from a prior relationship and the paternal grandparents of the minor children. Defendant Neal Sadler is the husband of Defendant Nicole Sadler (the Sadler Defendants); he has no biological relationship with the minor children.

On 12 July 2021, Plaintiff Teresa Craig filed a pro se Complaint for Custody

---

[1] Defendant Michael Brandon Hanna, Defendant Jennifer Cox, and Intervenor Joanne Arrowood are not involved in this appeal. Issues of custody and visitation of two separate minor children, which concerned those three parties, were also heard at the 26 July 2023 custody hearing we review here. After Plaintiffs filed Notices of Appeal on 19 January 2024, the trial court allowed Defendant Jennifer Cox's motion to sever the issues of custody and visitation of the other two minor children from Plaintiffs' present appeal in an Order entered 26 January 2024. Thus, the only parties named in the caption who are relevant to our review are Plaintiffs Teresa and John Craig, Defendants Nicole and Neal Sadler, and Defendant Christopher Jack Thompson. According to Plaintiffs' brief and our review of the docket, none of the Defendants have participated in this appeal. Only Plaintiffs filed an appellate brief.

[2] "Amy" and "Esther" are pseudonyms agreed upon by the parties.

against Defendant Thompson in Onslow County. She also sought ex parte relief in the form of emergency custody of Amy and Esther. Plaintiff contended ex parte emergency custody was warranted because the minor children were at "substantial risk" while in Defendant Thompson's custody due to, among other reasons, his "anger explosive disorder" and "consistant [sic] and current drug use." The trial court denied Plaintiff Teresa Craig's request for ex parte emergency custody and scheduled a temporary custody hearing for 27 July 2021. The action was assigned File Number 21 CVD 2372.

On 8 November 2021, Defendant Nicole Sadler filed a separate Complaint for Custody against Defendant Thompson in Onslow County, which was assigned File Number 21 CVD 3694.[3] Defendant also sought ex parte emergency custody of Amy and Esther. Defendant alleged the minor children's father, her son Defendant Thompson, had "become homeless." She stated Amy and Esther had been living at her home since 28 June 2021. Defendant requested the trial court "to allow these children to keep resid[ing] with me in my home." The same day, the trial court entered an ex parte order granting Defendant Nicole Sadler temporary custody of Amy and Esther.

On 1 December 2021, the trial court entered a Memorandum of Judgment in Plaintiff Teresa Craig's custody action, 21 CVD 2372, which "incorporated by

---

[3] Defendant's filing did not reference Plaintiff Teresa Craig's previously filed custody action for the same minor children.

reference" a handwritten agreement between Plaintiff Teresa Craig and Defendant Nicole Sadler. In relevant part, the agreement provided Plaintiff Teresa Craig with rights to visitation and electronic communication with Amy and Esther. The agreement also suggested a "custody hearing" would occur "after [the] holidays."

On 7 February 2022, Plaintiff Teresa Craig, now joined by her husband John Craig as a co-plaintiff, filed a pro se Amended Complaint for Custody against Defendant Thompson. Plaintiffs also sought an ex parte emergency transfer of custody of the minor children from Defendant Nicole Sadler to them. Plaintiffs alleged the minor children were being exposed to a "substantial risk of bodily injury" while in Defendant Nicole Sadler's custody, specifically claiming they had found "numerous human bite marks" on Esther's body during a recent weekend visit. Plaintiffs alleged it was their "belief and understand [sic] that these bites happened while the children werre [sic] in the care and custody of [Defendant Nicole Sadler]." The trial court denied Plaintiffs' request for an ex parte transfer of custody the same day.

The trial court held a hearing on 18 March 2022 on the issue of temporary custody of the minor children. The trial court entered a Temporary Custody Order on 1 April 2022 (the April 2022 Custody Order). The trial court concluded Defendant Thompson was an "unfit parent, and he has forfeited his Constitutionally protected status as a biological parent of the minor children." Upon a Conclusion of Law that "[i]t is in the best interest of the minor children . . . that the Plaintiff, Teresa Craig, have Temporary Custody of them[,]" the trial court granted temporary legal and

physical custody to Plaintiff Teresa Craig. Defendant Nicole Sadler was granted visitation every other weekend and "Facetime Phone Visitation" every other evening. The Order stated Defendant Nicole Sadler's visitation would be "suspended" if she allowed Defendant Thompson to have contact with the minor children. The April 2022 Custody Order consolidated the two custody actions under File Number 21 CVD 2372 and realigned the Craigs as Plaintiffs versus Defendants Nicole Sadler, Neal Sadler, and Christopher Thompson. A review hearing was set for 6 June 2022.

On 24 May 2022, Plaintiffs filed "a motion to suspend [the Sadler Defendants'] visitation" with the minor children. The motion was heard at the review hearing on 6 June 2022 and denied in an order entered 30 June 2022 nunc pro tunc 6 June 2022.

Plaintiffs later alleged that sometime in the early summer of 2022, the Sadler Defendants permitted Defendant Thompson to interact with the minor children at their home in violation of the April 2022 Custody Order. Soon thereafter, without seeking approval from the trial court, Plaintiffs unilaterally stopped allowing the Sadler Defendants to have visitation with the minor children, with the Sadlers' final visit concluding on 26 June 2022. On 20 July 2022, Plaintiff Teresa Craig informed Defendant Nicole Sadler by email she would not permit further visitation, stating "it was unsafe for the children to return to [the Sadler Defendants'] home."

On 18 December 2022, Plaintiffs met with Defendant Thompson shortly after he was released from jail. According to Plaintiffs, at this meeting, Defendant Thompson signed forms giving Plaintiffs his consent for them to adopt Amy and

Esther. On 24 March 2023, Plaintiffs filed petitions to adopt the minor children allegedly pending in Hyde County, Plaintiffs' place of residence.[4] On or about 14 April 2023, Defendant Nicole Sadler was served the statutorily required notice of Plaintiffs' filing of the adoption petitions.[5] Defendant Nicole Sadler "made various filings" in the Hyde County adoption proceedings during May and June of 2023.

On 31 May 2023, the Sadler Defendants filed a pro se "Motion for Show Cause/Contempt," which alleged Plaintiffs had kept the Sadlers from seeing or communicating with the minor children since June 2022. The same day, the Sadler Defendants also filed a pro se "Complaint for Child Custody" of Amy and Esther.

For the first time since unilaterally preventing the Sadler Defendants from visiting or communicating with Amy and Esther, Plaintiffs filed a formal Motion to Suspend Visitation on 29 June 2023. The Motion alleged "several developments and substantial changes in circumstances have occurred affecting the welfare of the minor children" since the trial court denied their initial motion to suspend visitation in June 2022. Specifically, Plaintiffs alleged Defendant Nicole Sadler had sexually abused the

---

[4] The Record before us does not include any materials from the adoption proceeding. The Record contains a purported "stipulation" that adoption petitions were filed originally in Hyde County and venue was changed to Onslow County. It is unclear given the fact Defendants did not take part in the appellate process that this is, in fact, a true stipulation to which they expressly consented.

[5] Defendant Nicole Sadler was entitled to receive notice of Plaintiffs' Chapter 48 adoption petitions because the April 2022 Custody Order gave her rights to visitation and communication with the minor children. *See* N.C. Gen. Stat. § 48-2-401(c)(4) (2025) ("In the adoption of a minor, the petitioner shall also serve notice of the filing on . . . [a]ny individual who the petitioner has been actually informed has legal or physical custody of the minor or *who has a right of visitation or communication with the minor* under an existing court order issued by a court in this State or another state." (emphasis added)).

older child, Amy. Plaintiffs grounded the allegations of abuse in disclosures Amy had allegedly made to her therapist, Judy Kilpatrick. Plaintiffs alleged Amy had "described inappropriate touching by [Defendant] Nicole Sadler . . . at the [Sadler Defendants'] home when [Amy] lived there." Plaintiffs' Motion to Suspend Visitation also stated they were "in the process of adopting the minor children in Hyde County." In their request for relief, Plaintiffs asked the trial court "to suspend all visitation and Facetime Phone visitation between the minor children and the [Sadler Defendants] and to be effective retroactively to June, 2022."[6]

The trial court held a hearing in the custody proceeding on 26 July 2023. Plaintiff Teresa Craig testified Plaintiffs had filed adoption petitions on 24 March 2023 and Defendant Nicole Sadler had been served with the required notice on 14 April 2023. Asked by her counsel about the relief requested in Plaintiffs' Motion to Suspend Visitation, Plaintiff Teresa Craig testified, "I'm asking the [trial court] to terminate [Defendant Nicole] Sadler's visitations so that my girls will feel the safety they need to feel, and we can continue with our adoption process unimpeded so they can have the family they desire." No records, filings, or other documents from the Hyde County adoption proceedings were introduced into evidence by Plaintiffs or the Sadler Defendants.

Plaintiffs also introduced evidence to support their allegations of abuse of Amy

---

[6] In their Motion to Suspend Visitation, Plaintiffs also asked the trial court "to dismiss the [Sadler Defendants'] Motion to Show Cause for Contempt filed against the Plaintiffs."

by Defendant Nicole Sadler. Specifically, Amy's therapist, Judy Kilpatrick, testified about disclosures Amy had made about the alleged abuse during therapy sessions.

Defendant Nicole Sadler testified about Plaintiffs' refusal to allow the Sadler Defendants to visit or communicate with Amy and Esther since 26 June 2022. She denied Plaintiffs' allegations she had sexually abused Amy, and stated her goal was to "modify custody" to provide her "full custody" of the minor children.[7]

The trial court entered a "Temporary Custody Order" on 6 September 2023 (September 2023 Custody Order). The trial court found "[i]n or around June of 2022, Plaintiffs Craig unilaterally suspended Defendant[s] Sadlers' visitation and that visitation has not resumed." The trial court also found as fact Plaintiffs had "failed to prove the allegations" of sexual abuse of Amy by Defendant Nicole Sadler and found the allegations "not to be credible."

The September 2023 Custody Order thereby modified custody to grant "[t]emporary legal and physical custody . . . to [Defendant] Nicole Sadler." The trial court ordered Plaintiffs to "place [the minor children] in [Defendant] Nicole Sadler's care immediately." The trial court did not set a date for a future review hearing.

On 27 November 2023, Plaintiffs filed a "Motion for Relief from Child Custody

---

[7] Defendant Nicole Sadler also testified the 31 May 2023 pro se Complaint for Child Custody was in substance a motion to modify custody. When asked by Plaintiffs' counsel, "And this is a complaint for change of custody. Correct?" Defendant Sadler agreed. Plaintiffs' counsel then asked, "And it's a complaint. It's not a motion. Correct? Motion for expedited hearing on motion to modify custody?" Defendant Sadler stated, "[t]hat's right. Motion to modify custody. . . . Because I want full custody of my grandchildren."

Order/Proceeding" under North Carolina Rule of Civil Procedure 60(b) (Rule 60(b) Motion). After recounting relevant facts and procedural history, Plaintiffs stated "evidence of [their] pending adoption proceedings . . . could not be properly introduced or considered [at the July 2023 hearing] due to the extensive confidentiality provisions" of the adoption statute, N.C. Gen. Stat. § 48. Plaintiffs stated the adoption petitions remained pending in Hyde County.

In the "Legal Basis" section of their Rule 60(b) Motion, Plaintiffs cited *Johns v. Welker*, 228 N.C. App. 177, 744 S.E.2d 486 (2013). In pertinent part, Plaintiffs summarized the issues and holding of *Johns*:

> 24. In *Johns v. Welker*, . . . the [C]ourt of [A]ppeals addressed the issue of simultaneous custody and adoption proceedings, warning "the potential for conflicting orders concerning the same minor child is substantial."[8]
>
> 25. Thus, the *Johns* [C]ourt held that, "in order to avoid unresolvable conflicts, the trial court must decline to exercise its jurisdiction in the custody action while a previously filed adoption proceeding is pending involving the same minor child by holding the custody action in abeyance."[9]

Plaintiffs contended "the [trial court's] decision to reverse custody of the minor children to [the Sadler Defendants], pursuant to the September 2023 Custody Order, inadvertently created the very type of 'unresolvable conflict' the *Johns* holding seeks to avoid." Plaintiffs requested the trial court: (1) "set aside and vacate" the September

---

[8] 228 N.C. App. at 182, 744 S.E.2d at 490.

[9] 228 N.C. App. at 182, 744 S.E.2d at 491.

2023 Custody Order "as null and void"; (2) "[r]einstate" the April 2022 Custody Order giving Plaintiff Teresa Craig temporary custody; and (3) "[h]old any . . . custody actions involving the minor children in abeyance until completion of the Chapter 48 adoption proceedings in Hyde County[.]"

At a hearing on the Rule 60(b) Motion on 7 December 2023, Plaintiffs' attorneys reiterated the applicability of *Johns v. Welker* but acknowledged the opinion had not been raised at the July 2023 hearing. Plaintiffs' attorney in the Hyde County adoption action, Mary Elizabeth Robertson, who was not present at the July 2023 custody hearing, appeared at the Rule 60(b) hearing. Attorney Robertson argued that, due to the "quite strict" confidentiality provisions of the adoption statute, Chapter 48, "evidence was not able to be presented" about the adoption proceeding at the July 2023 hearing. Attorney Robertson further claimed, at the time of the July 2023 hearing, she was "not expecting that custody was going to be changed[.]" Michael Lincoln, who represented Plaintiffs at the July 2023 custody hearing, also appeared at the Rule 60(b) hearing. Attorney Lincoln took responsibility for not attempting to introduce more evidence about the adoption proceedings at the custody hearing, explaining that, at the time, he "didn't realize . . . the impact the adoptions had on this custody case because in my mind the custody case was filed before the adoptions were filed." Attorney Lincoln acknowledged "a motion to stay [the custody case] should have been filed, but it wasn't." Nonetheless, Attorney Lincoln contended that because the adoptions were "pending," the custody case "should have been stayed."

In asking the trial court to grant Plaintiffs' Rule 60(b) Motion, Attorney Lincoln noted the trial court's "discretion in this is very broad, and it's equitable in nature."

In an Order entered 20 December 2023, the trial court "ordered that . . . Plaintiffs' [Rule 60(b)] motion for Relief is denied"[10] (Rule 60(b) Order). On 19 January 2024, Plaintiffs filed Notices of Appeal.

## **Appellate Jurisdiction**

A party appealing from a civil judgment or order must file and serve a notice of appeal within thirty days after entry of judgment. N.C. R. App. P. 3(c)(1) (2025). Here, Plaintiffs filed two separate Notices of Appeal on 19 January 2024. First, Plaintiffs filed Notice of Appeal from "the 'Temporary Custody Order' entered by the Onslow County District Court on September 6, 2023[.]" Second, Plaintiffs filed Notice of Appeal from:

> 1. The 'Order' denying Plaintiffs' [Rule 60(b) Motion] . . . entered on December 20, 2023;
>
> 2. All final and interlocutory judgments, orders, and/or proceedings underlying Plaintiffs' Rule 60(b) Motion for Relief, including, but not limited to, the 'Temporary Custody Order' entered on September 6, 2023, and related 'Child-Custody Proceeding' on July 26, 2023.

In the Statement of the Grounds for Appellate Review in their appellate brief, Plaintiffs assert the 20 December 2023 Rule 60(b) Order "constitutes a final judgment, and is appealable pursuant to [N.C. Gen. Stat.] §§ 1-277, 1-279.1, and 7A-

---

[10] The Rule 60(b) Order contained no Findings of Fact or Conclusions of Law.

27(b)(2), to include all underlying final judgments, orders, and proceedings." Plaintiffs, citing N.C. Gen. Stat. § 1-278, further "[s]pecifically" contend the September 2023 Custody Order and the July 2023 Child Custody Proceeding "are appealable as final judgments, orders, and proceedings underlying" their Rule 60(b) Motion.

N.C. Gen. Stat. § 1-278 is titled "Interlocutory orders reviewed on appeal from judgment[.]" Under this provision, "[u]pon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment." N.C. Gen. Stat. § 1-278 (2025).

"Review of an 'intermediate order' under N.C. Gen. Stat. § 1-278 is permissible when the following three conditions are met: '(1) the appellant must have timely objected to the order; (2) the order *must be interlocutory and not immediately appealable*; and (3) the order must have involved the merits and necessarily affected the judgment.'" *Warren v. Bonner*, 297 N.C. App. 615, 622, 911 S.E.2d 303, 308 (2025) (emphasis added) (quoting *Yorke v. Novant Health, Inc.*, 192 N.C. App. 340, 348, 666 S.E.2d 127, 133 (2008)).

Here, Plaintiffs make two contradictory characterizations of the September 2023 Custody Order. As discussed above, Plaintiffs assert this Court has authority to review the September 2023 Custody Order by citing N.C. Gen. Stat. § 1-278, which confers jurisdiction over interlocutory orders under certain conditions. *See id.* Thus, Plaintiffs appear to claim the September 2023 Custody Order is interlocutory. But

Plaintiffs also contend the September 2023 Custody Order, though designated "Temporary" by the trial court, "is, in fact, a permanent and final order . . . subject to relief under N.C.G.S. § 1A-1, Rule 60(b)."

Rule 60(b) is only available to seek relief "from a *final* judgment, order, or proceeding[.]" N.C. Gen. Stat. § 1A-1, Rule 60(b) (2025) (emphasis added). In other words, Rule 60(b) "only applies, by its express terms, to Final judgments." *Sink v. Easter*, 288 N.C. 183, 196, 217 S.E.2d 532, 540 (1975) (citations omitted). Conversely, Rule 60(b) "has no application to Interlocutory judgments, orders, or proceedings of the trial court." *Id.*

"A temporary child custody order is normally interlocutory[.]" *Tillman v. Jenkins*, 289 N.C. App. 452, 458, 889 S.E.2d 504, 510 (2023) (citation and quotation marks omitted). However, "[a] trial court's designation of an order as 'temporary' or 'permanent' is neither dispositive nor binding on an appellate court." *Dancy v. Dancy*, 247 N.C. App. 25, 31, 785 S.E.2d 126, 130 (2016) (citation and quotation marks omitted).

> A child custody order is temporary if (1) it is entered . . . without prejudice to either party; (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings was reasonably brief; or (3) the order does not determine all the issues. If a child custody order does not meet any of these criteria, it is permanent.

*Id.* (citations omitted). "[W]hether an order is temporary or permanent in nature is a question of law, reviewed on appeal de novo." *Smith v. Barbour*, 195 N.C. App. 244,

249, 671 S.E.2d 578, 582 (2009) (citation omitted).

Here, the September 2023 Custody Order does not satisfy any of the three conditions that could render it "temporary" as a matter of law. First, the trial court did not state whether the Order was entered with or without prejudice. *See Dancy*, 247 N.C. App. at 31, 785 S.E.2d at 130. Second, the Order did not state a "clear and specific reconvening time" or any other date indicating it planned to review the custody determination in the future. *See id.* Third, we cannot say the trial court did not determine all the issues.[11] *See id.* Therefore, because the September 2023 Custody Order does not satisfy any of the three conditions to qualify as a temporary order, it is a final order. *See id.*

Moreover, it is fundamental—contrary to Plaintiffs' argument—"if a party files a motion . . . under Rule 60(b) but fails to appeal the underlying order within thirty days, the appeal is untimely as to that order."

---

[11] Plaintiffs accurately cite the three-prong test from *Dancy* for determination of whether an order is temporary or permanent. However, Plaintiffs do not address the third prong, as they offer no argument as to why the September 2023 Custody Order "d[id] not determine all the issues." *Dancy*, 247 N.C. App. at 31, 785 S.E.2d at 130. We identify the following Record evidence as relevant to answering this question of law on de novo review. *See Barbour*, 195 N.C. App. at 249, 671 S.E.2d at 582.

At the beginning of the September 2023 Custody Order, the trial court stated the case had come on for hearing on 26 July 2023 "for the issues of temporary custody and suspension of visitation[.]" The Order awarded "[t]emporary legal and physical custody" to Defendant Nicole Sadler. This modification of custody necessarily resolved Plaintiffs' Motion to Suspend the Sadler Defendants' visitation provided by the prior April 2022 Custody Order. Thus, the September 2023 Custody Order resolved "the issues of temporary custody and suspension of visitation" that were before the trial court. The Order does not suggest the trial court considered any issues remained pending for future determination. Therefore, we cannot say the Order did not "determine all the issues." *Dancy*, 247 N.C. App. at 31, 785 S.E.2d at 130.

*Assoc. Behav. Servs., Inc. v. Smith*, 264 N.C. App. 277, 280, 826 S.E.2d 214, 216-17 (2019) (citing *Sea Ranch II Owners Ass'n, Inc. v. Sea Ranch II, Inc.*, 180 N.C. App. 226, 228-29, 636 S.E.2d 332, 333-34 (2006)); *see also Roark v. Yandle*, 283 N.C. App. 223, 226, 873 S.E.2d 27, 31 (2022) (appeal of underlying order was untimely where filing of a Rule 60(b) motion constituted a judicial admission the underlying order entered more than 30 days before filing of Notice of Appeal was a final order).

Thus, here, the 6 September 2023 Custody Order was final and immediately appealable. As Plaintiffs did not timely appeal from it within thirty days of its entry as required by N.C. R. App. P. 3(c)(1), we do not have appellate jurisdiction to review that Order. Consequently, the sole order Plaintiffs timely and properly appealed from on 19 January 2024 is the Rule 60(b) Order.

## Issue

The issue on appeal is whether the trial court erred by denying Plaintiffs' Rule 60(b) motion.

## Analysis

I.  Denial of Rule 60(b) Motion

Under North Carolina Rule of Civil Procedure 60(b),

> [o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (1) Mistake, inadvertence, surprise, or excusable neglect;

(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) The judgment is void;

(5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) Any other reason justifying relief from the operation of the judgment.

N.C. Gen. Stat. § 1A-1, Rule 60(b) (2025).

"The purpose of Rule 60(b) is to strike a proper balance between the conflicting principles of finality and relief from unjust judgments." *Carter v. Clowers*, 102 N.C. App. 247, 254, 401 S.E.2d 662, 666 (1991) (citation omitted). "Our Supreme Court has indicated that this Court cannot substitute 'what it consider[s] to be its own better judgment' for a discretionary ruling of a trial court, and that this Court should not disturb a discretionary ruling unless it 'probably amounted to a substantial miscarriage of justice.' " *Huggins v. Hallmark Enters., Inc.*, 84 N.C. App. 15, 25, 351 S.E.2d 779, 785 (1987) (quoting *Worthington v. Bynum*, 305 N.C. 478, 486-87, 290 S.E.2d 599, 604-05 (1982)). We review the denial of a Rule 60(b) motion "strictly for abuse of discretion, requiring this court to find there was a substantial miscarriage

of justice or that the decision is manifestly unsupported by reason." *Senner v. Senner*, 161 N.C. App. 78, 84, 587 S.E.2d 675, 679 (2003) (citations and quotation marks omitted).

Plaintiffs argue the trial court should have granted their Rule 60(b) Motion under subsections (b)(1), (b)(4), and/or (b)(6). We disagree on all three fronts.

A. *Rule 60(b)(1)*

Rule 60(b)(1) authorizes the trial court to grant relief on the basis of "[m]istake, inadvertence, surprise, or excusable neglect[.]" N.C. Gen. Stat. § 1A-1, Rule 60(b)(1) (2025). Our Supreme Court has stated

> whether excusable neglect has been shown is a question of law— not of fact. Based on the facts found by the trial court, an appellate court must determine, as a matter of law, whether [a] defendant's actions constitute excusable neglect.
>
> While there is no clear dividing line as to what falls within the confines of excusable neglect as grounds for the setting aside of a judgment, what constitutes excusable neglect depends upon what, under all the surrounding circumstances, may be reasonably expected of a party in paying proper attention to his case.

*Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 425, 349 S.E.2d 552, 554-55 (1986) (citations omitted). "Deliberate or willful conduct cannot constitute excusable neglect, nor does inadvertent conduct that does not demonstrate diligence[.]" *Couch v. Priv. Diagnostic Clinic*, 133 N.C. App. 93, 103, 515 S.E.2d 30, 38 (1999) (citations omitted). "Thus, mistakes of legal advice or mistakes of law are not within the contemplation of Rule 60(b)(1)." *Id.* (citing *Phifer v. Travellers' Ins. Co.*,

123 N.C. 405, 31 S.E. 715 (1898)) (other citations omitted).

Here, Plaintiffs' Rule 60(b)(1) argument appears as follows: (1) the confidentiality provisions of Chapter 48 limited their ability to introduce evidence about the pending adoption proceedings at the July 2023 custody hearing outside of "very brief testimonial evidence"; (2) their "intention[s]" in limiting the evidence about the adoption actions were to "adhere to the law and protect [the minor children]"; and therefore (3) their failure to introduce more evidence from the adoption actions was excusable neglect. We disagree.

The Record contains no indication Plaintiffs or their counsel limited the presentation of arguments or evidence about the pending adoption actions out of concern for Chapter 48's confidentiality provisions. In their 29 June 2023 Motion to Suspend Visitation, which was among the motions heard at the 26 July 2023 custody hearing, Plaintiffs stated they were "in the process of adopting the minor children in Hyde County." At the hearing itself, Plaintiffs' attorney, Michael Lincoln, asked Plaintiff Teresa Craig, "you filed a petition for the adoption of [Amy and Esther]. Is that correct?" Plaintiff Teresa Craig confirmed the adoption petitions were filed in March 2023 and notice was served on Defendant Nicole Sadler in April 2023. Plaintiff Teresa Craig also testified about meeting with Defendant Thompson on 18 December 2022 "after he had just come out of Craven County Jail, and he signed the consents for the adoptions[,]" which were then "given to the clerk of court." Later during direct examination, Attorney Lincoln asked Plaintiff Teresa Craig, "[n]ow you filed this

motion to suspend visitation. And what are you asking the [trial court] to do?" Her testimony again referenced the pending adoption proceedings: "I'm asking the [trial court] to terminate [Defendant Nicole] Sadler's visitations so that my girls will feel the safety they need to feel, and we can continue with our adoption process unimpeded so they can have the family they desire."

Plaintiffs' Motion to Suspend Visitation and Plaintiff Teresa Craig's testimony demonstrate Plaintiffs were willing to inform the trial court about their pending adoption actions, even if the information they presented was limited in absolute terms or in proportion to other evidence. Thus, to the extent Plaintiffs argue their introduction of only "very brief testimonial evidence" about the adoption proceedings was motivated by an intention to "adhere to" Chapter 48's confidentiality rules, Plaintiffs cite and we identify no Record evidence permitting that inference.

Additionally, the legal basis of Plaintiffs' Rule 60(b) Motion and the center of their appellate brief is this Court's opinion in *Johns v. Welker*, 228 N.C. App. 177, 744 S.E.2d 486 (2013). However, as Plaintiffs conceded at the December 2023 Rule 60(b) hearing, they did not raise *Johns* at the July 2023 custody hearing. Assuming for the sake of argument *Johns* is, in fact, controlling and would have compelled the trial court to hold the custody action in abeyance had Plaintiffs raised the opinion at the July 2023 hearing, they did not do so.

In sum, reviewing Plaintiffs' claim of excusable neglect as a question of law, *see Thomas M. McInnis & Assocs.*, 318 N.C. at 425, 349 S.E.2d at 554, we characterize

Plaintiffs' failure to introduce more evidence about their adoption petitions or to argue *Johns v. Welker* before the trial court as "mistakes of legal advice" and/or examples of "inadvertent conduct that does not demonstrate diligence," which do not warrant relief under Rule 60(b)(1), *see Couch*, 133 N.C. App. at 103, 515 S.E.2d at 38. Therefore, the trial court did not abuse its discretion by denying Plaintiffs' request for relief under Rule 60(b)(1).

B. *Rule 60(b)(4)*

"Under Rule 60(b)(4), a court may relieve a party from a judgment if the judgment is void. A judgment is void only when the issuing court has no jurisdiction over the parties or subject matter in question or has no authority to render the judgment entered." *Hillard v. Hillard*, 223 N.C. App. 20, 22, 733 S.E.2d 176, 178-79 (2012) (citing *In re Brown*, 23 N.C. App. 109, 208 S.E.2d 282 (1974)), *disc. review denied*, 366 N.C. 432, 736 S.E.2d 490 (2013) (Mem.).

Plaintiffs contend the September 2023 Custody Order is void because the trial court lacked jurisdiction or authority to enter it. We disagree.

Plaintiffs cite *Johns v. Welker* throughout their brief for the proposition the trial court should have held the custody action in abeyance due to their pending adoption petitions. However, *Johns* also expressly refutes their argument the September 2023 Custody Order is void for the purpose of Rule 60(b)(4) relief.

In *Johns*, this Court stated:

> The doctrine of prior pending action . . . *would not deprive the trial*

> *court of jurisdiction over the custody action.* Nevertheless, we
> believe that in order to avoid unresolvable conflicts, *the trial court*
> *must decline to exercise its jurisdiction* in the custody action while
> a previously filed adoption proceeding is pending concerning the
> same child by holding the custody action in abeyance.

228 N.C. App. at 182, 744 S.E.2d at 491 (emphasis added) (citations omitted).

In other words, the Court in *Johns* affirmatively held the trial court retained subject matter jurisdiction over the later-filed custody action even though the prior-filed adoption petition concerning the same minor child was pending in the same trial court. *Id.* Applying *Johns* to the instant case, the September 2023 Custody Order is not void for a jurisdictional defect because the trial court was not deprived of jurisdiction over the custody action, even though Plaintiffs' adoption petitions were pending at the time of the July 2023 custody hearing and the entry of the September 2023 Custody Order. *See id.*

Plaintiffs also contend the September 2023 Custody Order is void because the earlier April 2022 Custody Order had become a permanent and final custody order due to the "passage of time." This argument is meritless.

As pertinent here, the characterization of a child custody order as permanent or temporary matters because there are unique legal standards for parties seeking modification of permanent versus temporary custody orders:

> If a child custody order is final [i.e., permanent], a party moving
> for its modification must first show a substantial change of
> circumstances. If a child custody order is temporary in nature and
> the matter is again set for hearing, the trial court is to determine
> custody using the best interests of the child test without requiring

- 21 -

either party to show a substantial change of circumstances. *LaValley v. LaValley*, 151 N.C. App. 290, 292, 564 S.E.2d 913, 914-15 (2002) (citations and footnote omitted).

A child custody order is temporary if it satisfies any of the following conditions: (1) it is entered without prejudice to either party; (2) it states a clear and specific reconvening time and the interval between the two hearings was reasonably brief; or (3) it does not determine all the issues. *Dancy*, 247 N.C. App. at 31, 785 S.E.2d at 130 (citations omitted). Here, in the April 2022 Custody Order, the trial court stated: "This Order is Temporary and entered without prejudice to the Parties hereto." On that ground alone, it is a temporary custody order.[12] *See id.*

In sum, the trial court retained subject matter jurisdiction over the custody action notwithstanding the pending adoption petitions involving the same minor children. *See Johns*, 228 N.C. App. at 182, 744 S.E.2d at 491. Additionally, because the April 2022 Custody Order was a temporary custody order, *see Dancy*, 247 N.C. App. at 31, 785 S.E.2d at 130, the trial court had jurisdiction to modify custody to serve the best interests of the children, as it did in the September 2023 Custody Order, *see LaValley*, 151 N.C. App. at 292, 564 S.E.2d at 914-15.

---

[12] Plaintiffs contend the April 2022 Custody Order is a permanent custody order to set up a related argument that the Sadler Defendants did not meet their burden at the July 2023 custody hearing of showing a substantial change in circumstances justifying a modification of custody. However, because we conclude the April 2022 Custody Order is temporary, the Sadler Defendants were not required to demonstrate a substantial change of circumstances in order for the trial court to modify custody in their favor. *See LaValley*, 151 N.C. App. at 292, 564 S.E.2d at 914-15. Therefore, we do not address other aspects of this argument in Plaintiffs' brief.

Thus, the September 2023 Custody Order is not void. *See Hillard*, 223 N.C. App. at 22, 733 S.E.2d at 178-79. Therefore, the trial court did not err by denying Plaintiffs' request for relief under Rule 60(b)(4).

C. *Rule 60(b)(6)*

Rule 60(b)(6) authorizes a court to grant relief for "[a]ny other reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rule 60(b)(6) (2025). "Rule 60(b)(6) is equitable in nature and permits a trial [court] to exercise [its] discretion in granting or withholding the desired relief." *Baxley v. Jackson*, 179 N.C. App. 635, 638, 634 S.E.2d 905, 907 (2006) (citation and quotation marks omitted). To demonstrate entitlement to Rule 60(b)(6) relief, a movant must show: (1) extraordinary circumstances exist; (2) justice demands the relief; and (3) the movant has a meritorious defense. *Huggins*, 84 N.C. App. at 24-25, 351 S.E.2d at 785 (citations omitted). We review a trial court's decision to grant or deny relief under Rule 60(b)(6) "strictly for abuse of discretion[.]" *Senner*, 161 N.C. App. at 84, 587 S.E.2d at 679 (citations omitted).

The broad language of Rule 60(b)(6) belies its limitations. *See Concrete Supply Co. v. Ramseur Baptist Church*, 95 N.C. App. 658, 659-60, 383 S.E.2d 222, 223 (1989) ("Rule 60(b)(6) is not as broad as it first appears. . . . [I]t is not a 'catch-all' rule." (citation omitted)). On appellate review, this Court is

> preclude[d] . . . from addressing any alleged errors of law relating to the merits of the judgment itself. It is well settled that Rule 60(b)(6) does not include relief from errors of law or erroneous

judgments. . . . [I]n short, Rule 60(b)(6) may not be invoked as a substitute for appellate review of the merits of a contested judgment.

*Brown v. Cavit Scis., Inc.*, 230 N.C. App. 460, 464, 749 S.E.2d 904, 908 (2013) (citations, quotation marks, and brackets omitted). *See, e.g.*, *Baxley*, 179 N.C. App. at 638-39, 634 S.E.2d at 907-08 (affirming denial of Rule 60(b)(6) motion where appellant based the motion "on alleged errors of law"); *Wallis v. Cambron*, 194 N.C. App. 190, 194-95, 670 S.E.2d 239, 242 (2008) ("[J]udgments involving misapplication of the law may be corrected only by appeal and Rule 60(b) motions cannot be used as a substitute for appeal." (citation and quotation marks omitted)).

Further, Rule 60(b)(6) is not a means to make legal arguments that were available to a party at trial but not raised. *See Concrete Supply Co.*, 95 N.C. App. at 660, 383 S.E.2d at 223 (where appellant failed to raise a valid legal defense at trial and did not appeal resulting judgment, Rule 60(b)(6) not available to seek relief on the basis of the valid but unraised defense); *Piedmont Rebar, Inc. v. Sun Constr., Inc.*, 150 N.C. App. 573, 576-77, 564 S.E.2d 281, 284 (2002) (Rule 60(b)(6) not available to a property owner to assert a subcontractor had no right to enforce a lien where property owner did not make this legal argument at trial).

In the case *sub judice*, Plaintiffs' argument falls beyond the scope of Rule 60(b)(6) for two reasons. First, Plaintiffs contend the trial court's failure to follow *Johns v. Welker* and hold the custody action in abeyance constituted a "significant error" of law. However, Rule 60(b)(6) is unavailable as a substitute for appellate

review of alleged errors of law. *See Brown*, 230 N.C. App. at 464, 749 S.E.2d at 908. Second, as the basis for the alleged error of law in their Rule 60(b) Motion and appellate brief, Plaintiffs have relied on this Court's 2013 opinion in *Johns v. Welker*. But Rule 60(b)(6) does not give Plaintiffs a second chance to make a legal argument based on *Johns*, a case available to them at the July 2023 custody hearing which they did not raise. *See Concrete Supply Co.*, 95 N.C. App. at 660, 383 S.E.2d at 223.

Thus, Plaintiffs may not invoke Rule 60(b)(6) to seek correction of alleged errors of law based on an opinion available to them at the July 2023 custody hearing that went unraised. Therefore, the trial court did not abuse its discretion by denying Plaintiffs' request for relief under Rule 60(b)(6).[13]

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's Order denying Plaintiffs' Rule 60(b) Motion for Relief from the September 2023 Custody Order.

AFFIRMED.

Judges CARPENTER and FREEMAN concur.

Report per Rule 30(e).

---

[13] Because we conclude Rule 60(b)(6) relief is unavailable to Plaintiffs on the grounds they assert, we do not address whether they met their burden of showing that extraordinary circumstances exist, that justice demands relief, and that they have a meritorious defense. *See Huggins*, 84 N.C. App. at 24-25, 351 S.E.2d at 785.